Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:   (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiff*
Rearden LLC and Rearden Mova LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC, California limited liability companies,<br><br>Plaintiffs,<br><br>v.<br><br>CRYSTAL DYNAMICS, INC., a California corporation, SQUARE ENIX INC., a Washington Corporation,<br><br>Defendants. | Case No. 3:17-cv-04187-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       June 14, 2018<br>Time:      2:00 p.m.<br>Judge:    Hon. Jon S. Tigar<br>Ctrm:     9 (19th Floor) |

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................3

INTRODUCTION ...........................................................................................................3

FACTS ............................................................................................................................5

ARGUMENT ..................................................................................................................9

     A.    Rearden's evidence in opposition to summary judgment is to be believed, and all reasonable inferences drawn in Rearden's favor. ............................9

     B.    The evidence supports the reasonable inference that defendants knew of and had authorized DD3's capture of Ms. Luddington's performance as Lara Croft for *Rise of the Tomb Raider* using Contour. ...............................9

     C.    Defendants' summary judgment motion should be denied because their declarations fail to show there are no disputed issues of material fact and they are entitled to judgment as a matter of law........................................11

     D.    Alternatively, defendants' motion should be denied pursuant to Fed. R. Civ. P. 56(d) because Rearden is entitled to discovery as to at least the summer 2014 capture of Ms. Luddington's performance as Lara Croft in DD3's studios using Contour. ........................................................................16

CONCLUSION ..............................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*1–800–Bar None v. Brandow's Fairway Chrysler Jeep, Inc.*,
    No. C 06–5507 CW, 2007 WL 39372 (N.D. Cal. Jan. 4, 2007).....................................17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................9

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck*
    *Reservation*,
    323 F.3d 767 (9th Cir. 2003) ...................................................................................16, 17

*California ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*,
    138 F.3d 772 (9th Cir. 1998), *cert. denied*, 525 U.S. 822 (1998) ................................16

*McCauley v. Stanford Univ. Med. Ctr.*,
    No. C 07–1784 JF (RS), 2009 WL 650359 (N.D. Cal. Mar. 11, 2009) ........................17

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) .......................................................................................16

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
    784 F.2d 1472 (9th Cir. 1986) .....................................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ...................................................................................................... *passim*

Fed. R. Evid. 801 .........................................................................................................10, 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Rearden's First Amended Complaint alleges that DD3's use of the Contour program directly infringed the Contour program's copyright.  Dkt. 49 ¶ 107.  And it alleges that use of the Contour system and methods directly infringed Rearden's asserted Contour patents.  *E.g.*, *id.* ¶¶ 140–153.  Defendants contracted with actress Camilla Luddington to play Lara Croft in a new Tomb Raider game called *Rise of the Tomb Raider*.  Dkt. 60 ¶ 2–3.  They contracted with DD3 to perform the performance capture for *Rise of the Tomb Raider* in January 2014.  Dkt. 64 ¶ 4.  And in the summer of 2014, DD3 used Contour to capture Ms. Luddington's performance as Lara Croft.  Dkt. 60 ¶ 3.  When Ms. Luddington's representatives requested permission to publish her eyewitness account of the summer 2014 Contour capture at DD3's studios, defendants authorized her and facilitated by providing information about Contour to enable her to better explain it.  Dkt. 57 ¶ 3.   And subsequently, Ms. Luddington and Brian Horton, the Crystal Dynamics *Rise of the Tomb Raider* Game Director, gave numerous interviews confirming that defendants used Contour captures of Ms. Luddington's Lara Croft performance in the game.  Perlman Decl. Exs. 4–10; *see also* Ex. 11.  At no time did defendants take the position that the summer 2014 Contour captures of Ms. Luddington's performance as Lara Croft—a brand owned and jealously guarded by Square Enix—was unauthorized.  Consequently, it is reasonable to infer that defendants knew of DD3's Contour capture of Ms. Luddington performance as Lara Croft in the summer of 2014, and had authorized it.

Defendants' motion requests a ruling that there are no disputed issues of material fact and that defendants are entitled to a judgment of non-infringement as a matter of law.  It rests on *nine* declarations: one from Ms. Luddington, two from DD3, and six from Crystal Dynamics.  Taken together, the declarations purport to establish that defendants used conventional performance capture techniques for sequences that appeared *in the game*, did not or do not recall viewing and selecting Contour output *marked with a Rearden copyright notice*, and in producing performance captures used *in the game* they did not support or facilitate captures using Contour.

1    But Ms. Luddington cannot perform as Lara Croft without defendants' authorization, DD3

2    cannot capture images of an actress performing as Lara Croft without defendants' authorization, and

3    yet it is undisputed that Ms. Luddington's performance as Lara Croft *was* captured by DD3 using

4    Contour in the summer of 2014.  And DD3 does not provide Contour performance capture for free,

5    so *someone* hired DD3 to provide the Lara Croft performance capture using Contour in the summer

6    of 2014, and that someone had to be either defendants or a third party authorized by defendants.

7    Incredibly, only two of the declarations (Luddington and Briggs) even mention the summer 2014

8    Contour captures, and neither explains defendants' role in authorizing them or what was done with

9    the output.  The other declarations are carefully tailored to the conventional performance captures

10    that defendants say were used *in the game*.  Even DD3, which used Contour to capture Ms.

11    Luddington's Lara Croft performance in the summer of 2014 and submitted *two* declarations in

12    support of defendants' motion, ignores the Contour captures as if they never happened.

13    Consequently, defendants' summary judgment motion should be denied on two grounds.

14    First, as the moving party, defendants bear a burden to show that there are no disputed issues of

15    material fact regarding infringement.  And defendants infringe directly or indirectly if they used the

16    Contour program, system, and methods, regardless of whether the output was used to animate images

17    that appeared *in the game*, or images in a game trailer or videos used by defendants to *promote the*

18    *game.*  Defendants cannot carry their burden while sweeping the undisputed summer 2014 Contour

19    captures of Ms. Luddington as Lara Croft under the rug.  Second, Rearden is at least entitled to

20    discovery under Fed. R. Civ. P. 56(d) regarding the summer 2014 Contour capture of Ms.

21    Luddington as Lara Croft, defendants' authorization of that capture, their role in supervising,

22    facilitating, and supporting that capture, and how they used the Contour output in relation to *Rise of*

23    *the Tomb Raider*.

24    At the Case Management Conference, Rearden expressed a willingness to consider voluntary

25    dismissal if defendants' summary judgment papers confirm that they did not use Contour for *Rise of*

26    *the Tomb Raider*.  But the undisputed evidence confirms that they *did* use Contour.  And Rearden

27    cannot consider voluntary dismissal when defendants hide the ball.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:17-cv-04187-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTS**

The *Tomb Raider* video game franchise and its lead character, Lara Croft, are intellectual property belonging to Square Enix. Square Enix claims a copyright in the *Tomb Raider* video games, and TOMB RAIDER and LARA CROFT are registered trademarks of Square Enix. Perlman Decl. Ex. 1. Any unauthorized *Tomb Raider* work featuring an actress portraying Lara Croft would constitute an infringement of Square Enix's copyrights and trademarks.

Actress Camilla Luddington was hired by Crystal Dynamics to portray Lara Croft in the *Rise of the Tomb Raider* videogame. Dkt. 60 at ¶ 2. In the summer of 2014, Ms. Luddington participated in a facial performance capture session in DD3's studios, in which DD3 applied the distinctive phosphor-based Contour makeup to her face and captured her performance as Lara Croft pursuant to her contract with defendants for *Rise of the Tomb Raider* using the Contour program, system, and methods. *Id.* at ¶3.

In July 2014, Ms. Luddington's representative contacted Richard Briggs, the Crystal Dynamics Brand Director responsible for the *Rise of the Tomb Raider* video game, to ask whether Ms. Luddington could tweet a picture of herself as Lara Croft wearing the distinctive phosphor-based makeup from her Contour facial performance capture session at DD3's studios. Dkt. 57 ¶ 3. As Brand Director for *Rise of the Tomb Raider*, Briggs was primarily responsible for "managing the brand identity of … *Rise of the Tomb Raider* ("ROTR"), including the brand of its main protagonist, Lara Croft," and "ensuring that the brand tenets are maintained in the game, in promotional materials for the game and across media platforms." Dkt. 57 ¶ 2. Significantly, when Ms. Luddington's representative contacted him in July 2014, he did not ask who was capturing her performance as Lara Croft, demand that the captures cease and desist, or report an unauthorized use of Square Enix's Lara Croft and Tomb Raider copyrights and trademarks; rather, he authorized and facilitated her publication of her eyewitness account of the DD3 Contour capture: he "obtained and conveyed" information about "MOVA" that would enable Ms. Luddington and others to describe it. *Id.* ¶ 3.

It is a reasonable inference from Mr. Briggs's declaration that he knew about the performance capture session at DD3 where the Contour system and methods were used when Ms. Luddington's

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:17-cv-04187-JST

representatives called him.  And it is reasonable also to infer that he believed whoever had contracted for the Contour session, whether DD3 or a third party, was authorized by defendants.

On August 7, 2014, Ms. Luddington tweeted a "selfie" that she had taken during the Contour performance capture at DD3, clearly displaying the distinctive random pattern of glowing phosphor-based makeup that confirms unmistakably that her performance as Lara Croft was captured using the Contour program, system, and methods:



Perlman Decl. Ex. 2.  With the photograph, she tweeted (hash tagging Square Enix's "Tomb Raider" trademark), "#tombraider fans.This is #mova.Florescent [sic] paint that is sprayed all over my face 2give 7000 points of ref!!!"  *Id.*  She also posted the photograph on Instagram with the message: "***NO filter*** #tombraider fans- this is MOVA. Fluorescent paint that is sprayed all over my face to give 7000 points of reference as oppose to the normal 90 points that you see with the 'dots' drawn on people's face. This means MUCH more realistic face and movement for Lara. You can only see the paint when under a black light. #RiseOfTheTombraider #laracroft #mova."  And Ms. Luddington

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

also posted a selfie on Instagram of her being prepared for a Contour capture session as Lara Croft with an airbrush spraying on the phosphor-based makeup, as taught in Rearden Mova US Patent 8,659,668 (10:22-23) and claimed in patents in this case, with the message: "#mova being applied #tombraider #laracroft #bonuspicforiG":



Perlman Decl. Ex. 3.

On September 4, 2014, Ms. Luddington gave an interview to USA Today in which she stated that Contour was used to capture her performance *in the game*.[1]  Perlman Decl. Ex. 4.  In late February 2015, Ms. Luddington gave an interview to gameinformer.com just nine months before Rise of the Tomb Raider was launched, maintaining that Contour technology was used for facial motion capture *in the gameplay*.  Perlman Decl. Ex. 5.   On July 17, 2015, Ms. Luddington gave an interview at the important San Diego Comic-Con where she confirmed that Contour was used *in the game*.[2] Perlman Decl. Ex. 6.  On September 30, 2015, Ms. Luddington confirmed again that Contour

---

[1] https://www.youtube.com/watch?v=lwZOUzuv63k (0:00–1:17)

[2] https://youtu.be/QmjrpagZa_8?t=6m21s (6:21–8:04)

was used for facial capture in *both the game and its promotional trailer*, shortly before the game was released.[3]  Perlman Decl. Ex. 7.  And, on June 2, 2016—more than six months after the game's release—Ms. Luddington not only reaffirmed that Contour was used for the facial capture in the game, but also that the game's facial capture production alternated on different days between Contour and conventional marker-based capture, depending on the facial detail required.[4]  Perlman Decl. Ex. 8.

And it was not only Ms. Luddington and DD3 who admitted that Contour technology was used in the *Rise of the Tomb Raider* game.  Brian Horton, the *Rise of the Tomb Raider* Game Director at Crystal Dynamics, gave an interview on June 16, 2015, to Xbox Daily Live, captured on YouTube, in which he stated that Ms. Luddington's performance was captured "with 1000 points of data" which brought her performance through to the game in "micro details" that brought the character "to the next level of humanity."[5]  Perlman Decl. Ex. 9.  He gave another interview on July 18, 2015, also captured on YouTube, in which when asked to describe defendants' use of "[t]he MOVA tech" technology to create "the Lara Croft" character, he described capturing "nuances of [Ms. Luddington's] face with thousands of points of data that … come when they splatter the [Contour] paint on."[6]  Perlman Decl. Ex. 10.  And DD3 confirmed in a July 29, 2015 post on its Facebook page that Contour technology was used in the *Rise of the Tomb Raider* game, citing Brian Horton as the source.  Perlman Decl. Ex. 11.

To this day, the above public admissions by defendants and their representatives that Ms. Luddington's performance as Lara Croft for *Rise of the Tomb Raider* was captured using the Contour program, system, and methods, and was used in the game's *gameplay*, have never been publically retracted by defendants.  Their admissions and failure to retract them further underscore the reasonable inference that when Ms. Luddington's performance was captured by DD3 using the Contour program, system, and methods, defendants knew of and had authorized the capture.

---

[3] https://youtu.be/iPj_5xlQVk4 (0:00–1:03)

[4] https://youtu.be/lPkU-kTIMnk?t=9m51s (9:51–11:21)

[5] https://www.youtube.com/watch?v=pWTphH_-bAU

[6] https://www.youtube.com/watch?v=EPdV9vQ9bMk

DD3 does not perform facial performance capture for free.  Dkt. 64 ¶¶ 3–4.  So DD3's capture of Ms. Luddington's performance as Lara Croft for *Rise of the Tomb Raider* using Contour supports the further reasonable inference that *someone* hired DD3 to do it, and that if it was not defendants themselves, then that *someone* had to have been authorized by defendants.

## ARGUMENT

**A.    Rearden's evidence in opposition to summary judgment is to be believed, and all reasonable inferences drawn in Rearden's favor.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and "material" if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 249–250.

**B.    The evidence supports the reasonable inference that defendants knew of and had authorized DD3's capture of Ms. Luddington's performance as Lara Croft for *Rise of the Tomb Raider* using Contour.**

Defendants admit that in the summer of 2014, actress Camilla Luddington was under contract with them to portray Lara Croft in the video game *Rise of the Tomb Raider.*  Dkt. 60 ¶ 2.  They admit that Ms. Luddington's performance as Lara Croft for *Rise of the Tomb Raider* was captured by DD3. *Id.* ¶ 3.  And they concede that at least one of those performances was captured by DD3 using the Contour program, system, and methods, referred to by Ms. Luddington as "MOVA."  *Id.*

Rearden has submitted evidence that the *Tomb Raider* franchise and Lara Croft are the subject of copyrights and trademarks owned by Square Enix.  Perlman Decl. Ex. 1.  It follows that

1    any unauthorized *Tomb Raider* work with Ms. Luddington's performance as Lara Croft would

2    infringe Square Enix's copyrights and trademarks.

3           And the evidence supports the inference that at the time Ms. Luddington's performance as

4    Lara Croft under her *Rise of the Tomb Raider* contract was captured by DD3 using the Contour

5    program, system, and methods, defendants knew of and had authorized the capture.  Mr. Briggs has

6    testified that as a Brand Director for Crystal Dynamics, he was primarily responsible for "managing

7    the brand identity of … *Rise of the Tomb Raider* ('ROTR'), including the brand of its main

8    protagonist, Lara Croft." Dkt. 57 ¶ 2.  He was responsible for "ensuring that the brand tenets are

9    maintained in the game, in promotional materials for the game and across media platforms." *Id.*

10   And when Ms. Luddington's representative contacted him in July 2014 to ask whether she could post

11   pictures in full Contour makeup as Lara Croft as part of what he was told was the "MOVA" process,

12   he did not ask who was capturing her performance, demand that the captures cease and desist, or

13   report an unauthorized use of Square Enix's copyrights and trademarks; rather, he authorized her to

14   publish her eyewitness account of the Contour capture and facilitated it.  *Id.* ¶ 3.  He "obtained [from

15   an unspecified source] and conveyed" information about "MOVA" that would enable Ms.

16   Luddington and others to describe it.  *Id.*

17          The inference that defendants knew of and had authorized the summer 2014 Contour capture

18   of Ms. Luddington as Lara Croft under her *Rise of the Tomb Raider* contract is further supported by

19   the conduct of defendants' authorized representatives after the capture.  Defendants took no action to

20   protect their Lara Croft and Tomb Raider copyrights and trademarks when Ms. Luddington posted

21   selfies as Lara Croft in Contour makeup.  Perlman Decl. Exs. 2–3.[7] And her posts were not isolated

22   Twitter and Instagram events.  Ms. Luddington's selfies and eyewitness account of defendants' use

23   of Contour technology to capture her Lara Croft performance for *Rise of the Tomb Raider* were

24   widely reported in the online video game press.  Perlman Decl. Exs. 12–24.[8] Ms. Luddington gave

25

26          [7] These exhibits are not hearsay because defendants authorized Ms. Luddington to make
     statements on her Contour capture by DD3.  Fed. R. Evid. 801(d)(2)(C); Dkt. 57 ¶ 3.

27
28          [8] These exhibits are not hearsay because they are not offered "to prove the truth of the matter
     asserted," *viz.*, that Ms. Luddington's Lara Croft performance was captured using Contour, but rather

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:17-cv-04187-JST

1    interviews maintaining that Contour technology was used for facial motion capture *in the game*. *Id.*,

2    Exs. 4–8.[9]  And Crystal Dynamics' own *Tomb Raider* Game Director Brian Horton gave at least two

3    interviews in which he confirmed Ms. Luddington's reports that defendants used Contour technology

4    *in the game*.  *Id.*, Exs. 9–10.[10]  *DD3* posted on its MOVA Facebook page that Contour technology

5    was used in *Rise of the Tomb* Raider, citing Horton as a source.  *Id.*, Ex. 11.  Defendants have never

6    publically retracted any of these admissions.[11]

7    **C.**    **Defendants' summary judgment motion should be denied because their declarations fail**

8             **to show there are no disputed issues of material fact and they are entitled to judgment as a matter of law.**

9    As the party moving for summary judgment, defendants bear the initial burden to establish

10    "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

11    matter of law." Fed. R. Civ. P. 56(a).  Defendants cannot carry their burden while ignoring the

12    elephant in the room.  The First Amended Complaint alleges that DD3's use of Contour directly

13    infringed the Contour program's copyright.  Dkt. 49 ¶ 107.  And it alleges that use of the Contour

14    system and methods directly infringes the asserted Contour patents.  *E.g.*, *id.* ¶¶ 140-153.

15    Defendants contracted with Ms. Luddington to play Lara Croft in a new Tomb Raider game called

16    *Rise of the Tomb Raider*.  Dkt. 60 ¶ 2–3.  They contracted with DD3 to perform the performance

17    capture for *Rise of the Tomb Raider*.  Dkt. 64 ¶ 4.  In the summer of 2014, DD3 used Contour to

18    capture Ms. Luddington's performance as Lara Croft.  Dkt. 60 ¶ 3.  And as explained above, it is

19    reasonable to infer that defendants knew of DD3's Contour capture of Ms. Luddington performing as

20    Lara Croft in the summer of 2014, and had authorized it.

21    But only two of defendants' carefully-worded declarations, Luddington's and Briggs's,

22    mention the summer 2014 Contour capture.  And although some of the declarants state that

23

24    that Ms. Luddington's tweets were republished by the on-line video game press.  Fed. R. Evid.
     801(c)(2).

25    [9] These exhibits are not hearsay.  *See* n.7 *supra*.

26    [10] These exhibits are not hearsay because Mr. Horton, as Crystal Dynamics's Game Director for
     *Rise of the Tomb Raider*, gave the interviews in a representative capacity.  Fed. R. Evid.
     801(d)(2)(A).

27

28    [11] And DD3 confirmed on its Facebook page that the Contour system was used to capture
     performances in the *Rise of the Tomb Raider* game, citing Horton as a source.  Perlman Decl. Ex. 11.

1   defendants did not use Contour output *in the game*, none explain *why* defendants authorized the

2   summer 2014 Contour captures in the first place, and *what* they did with that Contour output.  All of

3   defendants' declarations that deny any material assistance or contribution by defendants address only

4   the <u>non</u>-*Contour* captures that the declarants say they used in the *Rise of the Tomb Raider* game.

5   None addresses defendants' role in the Contour capture of Ms. Luddington as Lara Croft that

6   defendants concede was done by DD3 in the summer of 2014, Contour captures that defendants have

7   repeatedly promoted—and have never retracted—for years were used to achieve the highly realistic

8   faces in the *Rise of Tomb Raider* game.  The summer 2014 Contour capture of Ms. Luddington's

9   performance as Lara Croft in DD3's studios is the elephant in the room that defendants ignore.

10          **Camilla Luddington (Dkt. 60)**:  Ms. Luddington states that she was hired by defendants to

11   portray Lara Croft in *Rise of the Tomb Raider*, that facial motion capture was performed by DD3,

12   and before August 2014, DD3 captured her performance as Lara Croft using "MOVA."  Dkt. 60 ¶ 2–

13   3.  She admits that she commented on social media and in interviews that "MOVA" had been used

14   by DD3 to capture her performance as Lara Croft, but she does "not know whether any output from

15   that session was actually used in ROTR."  *Id.* ¶ 3.

16          **Richard Briggs (Dkt. 57)**:  Briggs is the Crystal Dynamics Brand Director responsible for

17   protecting the Lara Croft and Tomb Raider brands.  Dkt. 57 ¶ 2.  In July of 2014, he received a call

18   indicating that Ms. Luddington's performance as Lara Croft for *Rise of the Tomb Raider* had been

19   captured by DD3 using "Mova."  *Id.* ¶ 3.  He of all people should have been alarmed if he

20   learned that an unauthorized Tomb Raider work featuring Lara Croft had been made.  But he did not

21   take the position, as protector of the Lara Croft and Tomb Raider brands, that the capture was

22   unauthorized.  *Id.*  Rather, he authorized Ms. Luddington to publish her eyewitness accounts of

23   DD3's Contour capture by providing information about "Mova" to "enable Ms. Luddington *and*

24   others to describe it."  *Id.*  He denies any personal knowledge that "Mova" was "used *in ROTR*."  *Id.*

25   But given the reasonable inference that he knew of the captures and believed them to have been

26   authorized, he does not disclose how he thought defendants *would* use the summer 2014 "Mova"

27   captures of Ms. Luddington as Lara Croft.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:17-cv-04187-JST

1    **Brian Horton (Dkt. 56):**  Horton is a Crystal Dynamics game director for *Rise of the Tomb*

2    *Raider*, a position that did not include any responsibility for performance capture.  Dkt. 56 ¶ 2.  He

3    admits that in interviews on "various media platforms" he "commented on the use [by defendants in

4    the *Rise of the Tomb* Raider game] of a performance motion capture method referred to as 'MOVA'

5    in such interviews."  *Id.* ¶ 3; *see, e.g.*, Perlman Decl. Exs. 9–10.  But he states that in so doing, he

6    "relied on input from the marketing team," whom he does not identify and does not explain why the

7    game's "marketing team" provided allegedly false "input" for him to publish.  *Id.*  He does not

8    mention the Contour capture of Luddington's performance as Lara Croft under her *Rise of the Tomb*

9    *Raider* contract with defendants that took place at DD3's studios in the summer of 2014.

10    **Kam Yu (Dkt. 58):**  Yu is the Crystal Dynamics Lead Character Artist on the *Rise of the*

11    *Tomb Raider* videogame.  He denies referring to MOVA Contour in an interview, and denies

12    attending any motion capture sessions at DD3.  Dkt. 58 ¶ 3.  And he denies reviewing any Contour

13    output "that was marked with a Rearden copyright notice."  *Id.* ¶ 4.  He does not mention the

14    Contour capture of Luddington's performance as Lara Croft under her *Rise of the Tomb Raider*

15    contract that took place at DD3's studios in the summer of 2014.

16    **Noah Hughes (Dkt. 59):**  Hughes is a Crystal Dynamics Studio Creative Director for *Rise of*

17    *the Tomb Raider*.  Dkt. 59 ¶ 2.  He denies intending a reference to Contour in comments about the

18    gameplay experience in *Rise of the Tomb Raider*.  *Id.* ¶ 3.  And though he states he has "no

19    recollection" of reviewing Contour output "that was affixed with 'Copyright [current date] – Rearden

20    LLC' and the date and time of the capture," he does not state that he did not review *any* Contour

21    output.  He does not mention the Contour capture of Luddington's performance as Lara Croft under

22    her *Rise of the Tomb Raider* contract that took place at DD3's studios in the summer of 2014.

23    **Jon Robbins (Dkt. 61):**  Robbins is the Crystal Dynamics Lead Technical Artist for *Rise of*

24    *the Tomb Raider*.  Dkt. 61 ¶ 2.  He states that Contour was not used in the game.  *Id.* ¶¶ 3–6.  Though

25    he states that he did not review any Contour output "that was marked with a Rearden copyright

26    notice," he does not state that he did not review *any* Contour output.  *Id.* ¶ 7.  He does not mention

27

28

1    the Contour capture of Luddington's performance as Lara Croft under her *Rise of the Tomb Raider*

2    contract with defendants that took place at DD3's studios in the summer of 2014.

3         **Adrian Dimond (Dkt. 62):**  Dimond is DD3's Virtual Production Lead Technical Director

4    for the defendants' *Rise of the Tomb Raider* project.  He was responsible for motion capture in the

5    "production phase" of the *Rise of the Tomb Raider* video game.  Dkt. 62 ¶ 2.  And he asserts that

6    "Mova was not used during *Rise of the Tomb Raider*."  *Id.*  But he fails to acknowledge or explain

7    why DD3 reported the contrary—that "Mova" *was* used for *Rise of the Tomb Raider*—on the MOVA

8    Facebook page that DD3 controlled.  *See* Perlman Decl. Ex. 11.  And he does not mention the

9    Contour capture of Luddington's performance as Lara Croft under her *Rise of the Tomb Raider*

10   contract that took place at DD3's studios in the summer of 2014.

11        **Joseph Gabriel (Dkt. 63):**  Gabriel is DD3's general counsel, and submitted his declaration

12   "regarding the contracts under which motion capture was performed for Crystal Dynamics in

13   connection with the video game Tomb Raider: Rise of the Tomb Raider."  Dkt. 63.  Gabriel must

14   have known of the summer 2014 Contour capture of Ms. Luddington as Lara Croft, and the terms

15   and conditions under which DD3 performed that work.  But he states only vaguely that DD3 has no

16   contracts with Crystal Dynamics that mention "Mova" for *Rise of the Tomb Raider*, and even more

17   vaguely that "DD3 does not have any contracts *directly* with Square Enix."  *Id.* (emphasis added).

18   He does not mention the Contour capture of Luddington's performance as Lara Croft under her *Rise*

19   *of the Tomb Raider* contract that took place at DD3's studios in the summer of 2014, and he fails to

20   acknowledge or explain why DD3 reported that "Mova" *was* used for *Rise of the Tomb Raider*—on

21   the MOVA Facebook page that DD3 controlled.  *See* Perlman Decl. Ex. 11.

22        **David Kury (Dkt. 64):**  Kury is a Crystal Dynamics Senior Producer who managed motion

23   capture cinematics for *Rise of the Tomb Raider*.  Dkt. 64 ¶2.  He states that the contracts between

24   Crystal Dynamics and DD3 do not expressly refer to "MOVA" or "Contour," and that Contour was

25   not used to capture facial performances for the game.  *Id.* ¶¶ 4–9.  He does not mention the Contour

26   capture of Luddington's performance as Lara Croft under her *Rise of the Tomb Raider* contract that

27   took place at DD3's studios in the summer of 2014.

28

1    At least four of defendants' declarations are rife with credibility issues that cannot be

2  resolved on summary judgment.  Ms. Luddington and Mr. Horton make statements that flatly

3  contradict their pre-suit public statements, which have never been publically recanted by defendants.

4  Perlman Decl. Exs. 2–10. Messrs. Dimond and Gabriel make statements that were flatly contradicted

5  by DD3 on its MOVA Facebook page.  Perlman Decl. Ex. 11.  Suspiciously, although it is

6  undisputed that DD3 *did* capture Ms. Luddington's performance as Lara Croft in its studios using

7  Contour at least in the summer of 2014, and although DD3 submits *two* declarations in support of

8  defendants' motion, DD3 submitted no declaration from anyone who admitted knowledge of the

9  summer 2014 Contour capture.  And suspiciously, Square Enix has not submitted *any* declarations,

10  so its representatives' knowledge of the summer 2014 Contour capture of Ms. Luddington as Lara

11  Croft—a brand Square Enix *owns* and jealously protects—has not been accounted for.

12    But even if taken at face value, the Crystal Dynamics and DD3 declarations fail to discharge

13  defendants' burden to show that there are no disputed material factual issues on infringement and

14  that defendants are entitled to judgment as a matter of law. While *some* of defendants' declarations

15  state that they did not use any Contour captures or output of Ms. Luddington's performance as Lara

16  Croft *in the game*, this testimony does not show that there is no issue of material fact as to

17  infringement.  Defendants' infringement of Rearden's copyright and patents is no less if defendants

18  authorized, supervised, and controlled the use of DD3's summer 2014 Contour captures in, for

19  example, a game trailer or game videos that they used to promote *Rise of the Tomb Raider*.[12]

20  Because defendants admit but do not explain the summer 2014 Contour captures of Ms. Luddington

21  as Lara Croft, their declarations do not carry their burden as the moving party.  Consequently, their

22  motion for summary judgment of non-infringement should be denied.

23

24

25

---

26    [12] Ms. Luddington publicly stated, "[because of Contour] I think even in the trailer [Lara Croft]
looks a lot more realistic."  https://youtu.be/iPj_5xlQVk4 (0:00–1:03).  Perlman Decl. 7.  And
27  Horton publicly stated, "…they splatter the [Contour] paint on, and that is then processed to create
the motion you see on [Lara Croft's] face in the trailer or in the gameplay…"
28  https://www.youtube.com/watch?v=EPdV9vQ9bMk. Perlman Decl. Ex. 10.

1  **D.     Alternatively, defendants' motion should be denied pursuant to Fed. R. Civ. P. 56(d) because Rearden is entitled to discovery as to at least the summer 2014 capture of Ms. Luddington's performance as Lara Croft in DD3's studios using Contour.**

2

3  Rule 56(d), formerly Rule 56(f), provides that "[i]f a nonmovant shows by affidavit or

4  declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the

5  court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

6  declarations or to take discovery; or (3) issue any other appropriate order."[13]  Parties seeking relief

7  pursuant to Rule 56(d) "must show (1) that they have set forth in affidavit form the specific facts that

8  they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-

9  after facts are 'essential' to resist the summary judgment motion." *California ex rel. Cal. Dep't of*

10  *Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998), *cert. denied*, 525 U.S. 822

11  (1998).

12  Courts are especially encouraged to grant Rule 56(d) motions when, as defendants do here,

13  the motion for summary judgment is brought before discovery and the requesting party has not "had

14  any realistic opportunity to pursue discovery relating to its theory of the case." *Burlington N. Santa*

15  *Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

16  In this circumstance, the requesting party is not expected to "frame its [Rule 56(d)] motion with great

17  specificity," *id*. at 774, and may support the request with "(a) a timely application which (b)

18  specifically identifies (c) relevant information, (d) where there is some basis for believing that the

19  information sought actually exists[.]" *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d

20  1472, 1475 (9th Cir. 1986). For example, in *Burlington Northern Santa Fe Railroad Co.*, the plaintiff

21  filed suit and, less than one month later and before any discovery could take place, moved for

22  summary judgment, which was granted. 323 F.3d at 769, 773. The Ninth Circuit reversed the district

23  court, holding that it should have allowed the defendants to conduct discovery under Rule 56(d)

24  before granting the motion because they had "some basis for believing" that the plaintiff's actions

25  were harmful but were unable to present specific evidence due to lack of opportunity for discovery.

26  _____

27  [13] *See Ohno v. Yasuma*, 723 F.3d 984, 990 n. 7 (9th Cir. 2013) (explaining that "[f]ormer Rule 56(f) of the Federal Rules of Civil Procedure became Rule 56(d) under the 2010 Amendments to the

28  Federal Rules," and that "the relevant case law in this circuit all refer to the former Rule 56(f)").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:17-cv-04187-JST

1    *Id.* at 774. In this circumstance, "lightning-quick summary judgment motions can impede informed

2    resolution of fact-specific disputes." *Id.*[14]   Here, Rearden has had *no* opportunity to take discovery in

3    this case.  The commencement of discovery has been stayed until the Further Case Management

4    Conference on July 11, 2018.

5        Rearden has met its burden under Rule 56(d) with the concurrently-filed declaration of Steve

6    Berman.  As summarized below, the Berman declaration, which is incorporated here by this

7    reference, shows (1) the specific facts that Rearden hopes to elicit from further discovery, (2) that the

8    facts sought exist, and (3) that these sought-after facts are essential to resist defendants' summary

9    judgment motion.

10       **The circumstances of the summer 2014 Contour capture.**  Defendants concede that Ms.

11   Luddington provided a performance as Lara Croft pursuant to her contract with defendants for *Rise*

12   *of the Tomb Raider* that was captured at DD3's studios using the Contour program, system, and

13   methods.  As demonstrated above, the facts support an inference that defendants knew of the 2014

14   Contour capture, and authorized it.  Rearden expects to elicit the identity of the person or persons at

15   Crystal Dynamics who authorized the summer 2014 Contour capture, and the purpose for which the

16   capture was authorized.  Since the capture was of Ms. Luddington performing as Lara Croft under

17   the terms of her *Rise of the Tomb Raider* contract with defendants, it follows that the purpose was in

18   furtherance of the game.  Rearden expects to establish that the purpose of the capture was either to

19   use it in the game itself, or in the promotion of the game.  Use of Contour results in copyright and

20   patent infringement regardless of whether the output is used in the game or to promote the game.

21   And while defendants' declarants state that they did not attend or participate in a motion capture

22

23       ─────────────

[14] Cases in this district suggest that unless plaintiffs failed to exercise due diligence in conducting
discovery, filed an untimely Rule 56(d) request, or failed to explain how additional facts would
oppose summary judgment, the request is generally granted with liberality. *See McCauley v. Stanford
Univ. Med. Ctr.*, No. C 07–1784 JF (RS), 2009 WL 650359, at *13 (N.D. Cal. Mar. 11, 2009); *1–
800–Bar None v. Brandow's Fairway Chrysler Jeep, Inc.*, No. C 06–5507 CW, 2007 WL 39372 at
*10 (N.D. Cal. Jan. 4, 2007). This is especially true when the request is filed at such an early
juncture of the case. *See Burlington N. Santa Fe R. Co.*, 323 F.3d at 773 (When "a summary
judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to
pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion
fairly freely.").

session for the game that used Contour, it is likely that other defendant representatives may have attended and participated in the summer 2014 Contour session of Ms. Luddington as Lara Croft.

**The terms on which DD3 performed the summer 2014 Contour capture.**  DD3 does not perform motion capture for free.  And a vendee does not pay for DD3's motion capture services without a contract.  If it is true that the contract and amendments attached to the Kury Declaration (Dkt. 64) do not cover the summer 2014 Contour capture, then there has to be some *other* contract or contracts.  Someone, either defendants or some third party, contracted with DD3 for the summer 2014 Contour capture of Ms. Luddington as Lara Croft, and if a third party, then defendants must have a contract authorizing the third party to make a work depicting Lara Croft.  Defendants' declarations confirm that defendants are protective of the distinctive Lara Croft image and brand. *See, e.g.*, Briggs ¶ 2 (Dkt. 57), Robins ¶ 6 (Dkt. 61), Kury ¶ 9 (Dkt. 64).  So Rearden expects that any contract between defendants and a third party that authorized the summer 2014 Contour capture of Ms. Luddington as Lara Croft would include terms that provide defendants with some measure of supervision and control.  And Rearden expects that any such contract would grant defendants the right to review images depicting Lara Croft and either approve them or disapprove them, and thus withhold authorization to use them.

**Expected Discovery.**  Rearden expects that discovery related to defendants' summary judgment motion would require document productions from defendants, DD3, and any third party involved, including all documents, contracts, and communications relating to "Mova," "Contour," and/or the summer 2014 capture of Ms. Luddington as Lara Croft by DD3 using Contour.  Following document production, Rearden expects to take Rule 30(b)(6) depositions of defendants, DD3, and any third party involved, regarding the summer 2014 Contour capture, and defendants' authorization, use, and actions with respect to that capture.

**Necessity.**  Defendants' declarants admit that Ms. Luddington's summer 2014 performance as Lara Croft was captured by DD3 using the Contour program, system, and methods, but otherwise ignore that infringement as if it never happened.  And ignoring that infringement, they argue that they have discharged their burden of showing that there is no material disputed factual issue as to

1    infringement, and that they are entitled to judgment as a matter of law.  Therefore, discovery

2    regarding the summer 2014 Contour capture of Ms. Luddington as Lara Croft by DD3—both of

3    whom were under contract with defendants to provide performances and performance captures for

4    *Rise of the Tomb Raider*—is necessary to respond to defendants' motion for summary judgment.

5                                       **CONCLUSION**

6           For the reasons stated herein, the Court should deny defendants' motion for summary

7    judgment.

8    DATED:  April 26, 2018                          HAGENS BERMAN SOBOL SHAPIRO LLP

9                                                    By */s/ Steve W. Berman*
10                                                        Steve W. Berman

11                                                   Steve W. Berman (*pro hac vice*)
                                                     Mark S. Carlson (*pro hac vice*)
12                                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                                     1918 Eighth Avenue, Suite 3300
13                                                   Seattle, WA 98101
                                                     Telephone:  (206) 623-7292
14                                                   Facsimile:   (206) 623-0594
                                                     steve@hbsslaw.com
15                                                   markc@hbsslaw.com

16                                                   Rio S. Pierce, CBA No. 298297
                                                     HAGENS BERMAN SOBOL SHAPIRO LLP
17                                                   715 Hearst Avenue, Suite 202
                                                     Berkeley, CA 94710
18                                                   Telephone:  (510) 725-3000
                                                     Facsimile:   (510) 725-3001
19                                                   riop@hbsslaw.com

20                                                   *Attorneys for Plaintiffs*
                                                     *Rearden LLC and Rearden Mova LLC*

21

22

23

24

25

26

27

28