RIMON, P.C.
Karineh Khachatourian (SBN 202634)
karinehk@rimonlaw.com
Nikolaus A. Woloszczuk (SBN 286633)
nikolaus.woloszczuk@rimonlaw.com
2479 E. Bayshore Road, Suite 210
Palo Alto, California 94303
Telephone: 650.461.4433
Facsimile: 650.461.4433

Attorneys for Defendants,
CRYSTAL DYNAMICS, INC. and Non-Party
SQUARE ENIX, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CRYSTAL DYNAMICS, INC., a California corporation, SQUARE ENIX, INC., a Washington Corporation,<br><br>Defendants. | Case No. 17-cv-04187-JST<br><br>**CRYSTAL DYNAMICS, INC.'S RESPONSE TO HBSS' MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFFS**<br><br>Hearing Date: October 16, 2019<br>Time: 2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RECENT BACKGROUND AND PROCEDURAL HISTORY | 2 |
| III. | RESPONSE TO HBSS' MOTION TO WITHDRAW | 3 |
| | A. Both HBSS and Rearden Have Known for Two Years that Any Use of MOVA was Limited to Microsoft's E3 Trailer | 4 |
| |     1. *What HBSS and Rearden Knew About the Microsoft E3 Trailer* | 4 |
| |     2. *What Rearden Specifically Knew About the Microsoft E3 Trailer and When it Knew It is Important* | 7 |
| | B. The Court Should Retain Jurisdiction over HBSS for any Motion for Attorneys' Fees and/or Costs | 10 |
| IV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

                                                    **Page(s)**

**Cases**

*FSLIC v. Ferrante*,
   364 F.3d 1037 (9th Cir. 2004).................................................................................................11

*Ringgold Corp. v. Worrall*,
   880 F.2d 1138 (9th Cir. 1989)..............................................................................................5, 8

**Other Authorities**

Fed. R. Civ. P. 56(d)...........................................................................................................5, 6, 7

Local Rule 11-5 ........................................................................................................................3

## I. INTRODUCTION

From the outset of this case, Crystal Dynamics, Inc. ("Crystal") consistently and repeatedly told plaintiffs Rearden LLC and Rearden Mova LLC (collectively, "Rearden") that Crystal never directly or indirectly used Rearden's MOVA software in the development of the *Rise of the Tomb Raider* videogame ("*ROTTR*"). Further, Crystal explained to Rearden that the confusion was due to Microsoft's apparent use of MOVA to create a *ROTTR* promotional E3 trailer—a trailer that Crystal did not produce, direct, or control—as part of Microsoft's role as the publisher of *ROTTR*. But Rearden refused to act on this information; instead it pressed forward with its shaky infringement theory regarding the *ROTTR* game, and it did so while willfully ignoring a steadily growing mountain of contrary evidence.

Now, over two years later, upon Rearden hearing from this Court that its *only* evidence that Crystal somehow allegedly infringed its copyrights in connection with the *ROTTR* game is "barely—perhaps *just* barely—enough so that a reasonable jury could believe Rearden's theory," Rearden appears to be attempting a late pivot to an infringement theory based on the Microsoft E3 trailer. As a result of this pivot, Rearden's counsel, Hagens Berman Sobol Shapiro LLP ("HBSS"), seeks to withdraw from the case, citing a potential conflict with Microsoft. The timing of HBSS' Motion to Withdraw ("Motion") is both frustrating and difficult to understand, given how long HBSS has been on notice that Microsoft was likely involved in a use of its client's copyrighted software.

While Crystal does not currently oppose the Motion, it seeks certain protections. Crystal has litigated this case for over two years, during which time the case has been significantly narrowed. But now Rearden may, with new counsel, seek to re-expand the case or even attempt a do-over. Whatever dispute Rearden and HBSS may now have, Crystal is an innocent bystander whose interests should be protected. While Rearden has been ducking the core issue of this case for two years, Crystal has continued to incur fees and costs in a case Rearden should have never brought in the first place.

However this Court decides HBSS' Motion, Crystal respectfully requests that the Court ensure that Crystal is not prejudiced any further by Rearden's and HBSS' unreasonable delay and

order: (1) Rearden cannot relitigate any part of this case, (2) resolving the scope of this case expeditiously, and (3) retaining jurisdiction over HBSS for purposes of any future motion by Crystal and Square Enix, Inc. ("Square Enix") for attorneys' fees and/or costs.

## II. RECENT BACKGROUND AND PROCEDURAL HISTORY

On July 12, 2019, this Court ordered the parties to meet and confer concerning whether the potential incorporation by amendment of Rearden's theory regarding the Microsoft E3 trailer requires the amendment of Rearden's written complaint, and present their agreements, disputes, or proposals on that subject to the Court by July 12, 2019. D.I. 194. On July 15, 2019, Crystal's counsel reached out to Rearden's counsel on timing and the parties agreed to an extension of the deadlines. KK Dec.[1], Ex. A. During these negotiations, Rearden requested more time, but never explained why it needed it. *Id.* The Court granted the parties' stipulation on July 18, 2019. D.I. 196. On July 22, 2019, Rearden's counsel suggested the parties "make another run at settlement." KK Dec., Ex. B. Crystal advised on July 30th that it needed to resolve the scope of the case before moving forward. *Id.* That same day, Rearden's counsel suggested another extension of the deadline, but never disclosed a conflict. *Id.*, Exs. A-B. On August 5th, pursuant to the parties' stipulation, this Court granted another extension to September 13, 2019. D.I. 198.

The foregoing delays and stipulated extensions were required, in large part, because Rearden—through its attorneys at HBSS—did not respond substantively to Crystal's requests for information about Rearden's position for nearly **two months**. Although Rearden and HBSS apparently knew by late July that Rearden would need to amend its complaint (for a second time) if it decided to proceed with its theory of vicarious liability based on the Microsoft E3 trailer (D.I. 202-1, ¶ 2; D.I. 202-2), rather than communicating with Crystal about Rearden's plans or HBSS' possible need to withdraw from the litigation, Rearden and HBSS instead went radio silent and stopped substantively responding to emails from Crystal's counsel. D.I. 202-3. As a result of Rearden's apparent refusal to engage with Crystal, on the afternoon of September 9th, Crystal

---

[1] References to "KK Dec." are to the Declaration of Karineh Khachatourian in Support of Crystal Dynamics, Inc.'s Response to HBSS' Motion to Withdraw, filed herewith.

filed an administrative motion asking this Court to set certain deadlines by which Rearden must make a decision about a possible second amendment of its complaint, as well as an appropriate briefing schedule. D.I. 202.

Later that night, in the evening of September 9th, HBSS filed its Motion. D.I. 203. The Motion came without any warning. Contrary to HBSS' representation in the Motion, and in violation of the Local Rules, HBSS did not provide "[p]ursuant to Local Rule 11-5, advance notice of this motion" to Crystal. *Id.*, Notice of Motion, 1:10-11. Crystal had no idea the Motion to Withdraw and Motion to Continue were coming until the motions arrived in Crystal's counsel's inboxes. According to HBSS, it advised Rearden on July 30, 2019, that HBSS had a conflict. D.I. 203, 3:23-25. Yet HBSS never advised Crystal during their discussions concerning the Court's September 13 deadline that HBSS had no intention to comply (or that, according to HBSS' recent filings, HBSS had an ethical conflict that purportedly prevented it from complying).

Rearden's recent filings indicate that it will oppose HBSS' Motion, and Rearden's apparent retention of an unnamed ethics counsel indicates that Rearden may even be contemplating legal action against HBSS. D.I. 209, 1:4-8 , 2:7-11. It appears that HBSS has not told the full story of what led to its Motion, including what it told Rearden about HBSS' purported potential conflict with Microsoft after Crystal advised HBSS (as Rearden's attorney) ***more than two years ago*** that "Microsoft, not Square Enix or Crystal Dynamics, produced, directed and controlled the [E3] trailer." D.I. 77-1.

At this point, and through no fault of its own, Crystal is stuck in the middle of a dispute between Rearden and HBSS. Crystal has been telling HBSS and Rearden for more than two years that any use of MOVA was probably attributable to Microsoft and its promotional trailer for *ROTTR*. For two years, HBSS and Rearden have instead pushed an infringement theory centered around the use of MOVA for the *ROTTR* videogame, even though the contrary evidence is overwhelming. Whatever the outcome of HBSS' Motion, Crystal should be protected against any further unjustified delay and prejudice.

**III.    RESPONSE TO HBSS' MOTION TO WITHDRAW**

Setting aside Rearden's infringement claims based on the *ROTTR* videogame, which have

survived by only the thinnest margin, Rearden's only other possible infringement theory is that Crystal is somehow vicariously liable for non-party Digital Domain 3.0, Inc. ("DD3")'s alleged infringement when DD3 used MOVA to create a *ROTTR* promotional E3 trailer for Microsoft. HBSS now seeks to withdraw citing a conflict with Microsoft, but as explained below, this potential conflict is not a new development. Rather, Rearden's and HBSS' failure to properly resolve the potential Microsoft conflict two years ago, when it first learned about the E3 trailer, and HBSS' sudden request to withdraw from the case, has placed Crystal at risk of suffering undue prejudice as a direct result of HBSS' and possibly Rearden's conduct (and potential misconduct) relating to their handling of the E3 trailer. As a result, this Court should remain vigilant to protect Crystal's position in this litigation.

### A. Both HBSS and Rearden Have Known for Two Years that Any Use of MOVA was Limited to Microsoft's E3 Trailer

The timing of HBSS' Motion is puzzling, as HBSS, and presumably its client Rearden, have known about the Microsoft E3 trailer for more than ***two years***. HBSS' (and possibly Rearden's) unexplained delay in investigating and addressing this potential conflict is inexcusable.

#### 1. *What HBSS and Rearden Knew About the Microsoft E3 Trailer*

Less than two months after Rearden filed its Complaint, Crystal told Rearden in a letter that Crystal did not use MOVA for *ROTTR* and put Rearden and HBSS on notice that any confusion about it might be due to Microsoft's use of MOVA for a *ROTTR* trailer:

> First, [Crystal] did not use the [MOVA program] to prepare any characters in [*ROTTR*], including Lara Croft. Ms. Luddington was incorrect to the extent her tweets suggest otherwise. Second, to the extent there was a promotional trailer for [*ROTTR*] in which the [MOVA program] may have been used, **Microsoft**, not Square Enix or Crystal Dynamics, produced, directed and controlled the trailer.

D.I. 77-1 (emphasis added). Crystal sent this letter to HBSS, but did not designate it as confidential, thus, there is no reason to believe that Rearden was not aware of the letter and its contents at that time. Regardless, a lawyer's knowledge is imputed to his/her client. *See Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141 (9th Cir. 1989) (a client is "considered to have notice of all

facts known to their lawyer-agent"). Further, Crystal publicly filed the letter in May 2018. D.I.77-1. Yet when Rearden amended its complaint in March 2018, it failed to include any allegations about the Microsoft E3 trailer. D.I. 49.

The record is replete with further discussion and evidence of Microsoft's creation of the *ROTTR* trailer and the fact that Crystal was not responsible for it. Nearly a year and a half ago, through briefing on Crystal's first motion for summary judgment ("First MSJ"), Crystal repeatedly reminded Rearden "that the [MOVA] session may have been for a trailer Microsoft (original publisher of ROTTR) created for the game, but that it was not captured for [Crystal] and any such captures were not used in ROTTR." D.I. 76, 1:20-23, 2:3-8, n.2, 3:8-14, 4:9-24, 7:4-6, 11:23-12:10; D.I. 78, ¶ 4; D.I. 77-1. Crystal's employee, David Kury, submitted a declaration under the penalty of perjury to these facts. D.I. 78, ¶¶ 2-3.

And as pointed out in Crystal's briefing, despite Rearden's knowledge of this, "Rearden did not pursue third party discovery of Microsoft …. Rearden had eight months in which to take discovery … yet nonetheless failed to take a single deposition or request a single document." D.I. 76, 11:23-12:10.

Rearden confirmed that it was aware of its need for third-party discovery when it invoked Fed. R. Civ. P. 56(d) in its opposition to Crystal's First MSJ. D.I. 70, 4. HBSS' attorney, Steve Berman, submitted a declaration in support of this Rule 56(d) request and stated that:

> Rearden expects that defendants and/or *an authorized third party* will know for what purpose the Contour output from the summer 2014 capture was used, whether to animate CG characters that appeared in the Rise of the Tomb Raider game itself, *or in a trailer* or other video used to promote the game …. Rearden expects that pursuant to Rule 56(d), it can discover the above-identified facts through document productions from defendants, DD3, and *any third party involved* …. Following document production, Rearden expects to take Rule 30(b)(6) depositions of defendants, DD3, *and any third party involved* ….

D.I. 72, ¶¶ 13-14 (emphasis added). Even Rearden's CEO's own declaration in support of Rearden's Opposition included exhibits that reference the "Microsoft E3 2014 press conference" and included *links* to the Microsoft E3 trailer. D.I. 71-20, 2; D.I. 71-13, 3-4.

This Court granted Rearden's Rule 56(d) request for further discovery and denied Crystal's

First MSJ without prejudice. D.I. 83. In so doing, this Court credited Rearden's counsel's representation that Rearden intended to take third-party discovery on a number of issues, including for "a trailer or other video used to promote the game." *Id.*, 3:2-11 (citing D.I. 72, ¶ 13). Yet when the parties negotiated a discovery plan, Rearden did not seek to subpoena Microsoft for documents or deposition testimony. D.I. 99. Similarly, when Rearden moved this Court in May 2018 for permission to subpoena certain third parties for documents and deposition testimony, it did not seek discovery from Microsoft. D.I. 80-1.

Despite Rearden's efforts to avoid the Microsoft issue, Rearden's depositions of Crystal witnesses in November 2018 resulted in testimony further confirming that Camilla Luddington's tweets about a single MOVA session were tied to Microsoft's E3 trailer, and not the *ROTTR* videogame. D.I. 122-3, 60:4-61:11, 68:2-6, 73:2-77:6, 89:18-90:2, 96:2-24 (Briggs Dep. Tr.). And, in August, 2018, Rearden obtained documents ***confirming this*** through its own document subpoena to DD3. *See* D.I. 121-1; D.I. 121-3; D.I. 120-8, 15:1-7 (Renewed MSJ); KK Dec., ¶ 4.

In its Renewed MSJ briefing in January 2019, Crystal yet again raised, in great detail and with citations to evidence, that Luddington's MOVA session was for the Microsoft E3 trailer, not the *ROTTR* videogame. D.I. 120-8, *passim;* D.I. 141-4, *passim*. In response, HBSS did not even raise the possibility of a conflict with Microsoft, much less seek to withdraw. *See, e.g.*, D.I. 128-4. To the contrary, HBSS and Rearden embraced Crystal's acknowledgment that DD3 likely used MOVA to make the E3 trailer, arguing that this strengthened Rearden's case. *Id.*, 1:10-13 ("Defendants now admit that Camilla Luddington's performance as Lara Croft for *Rise of the Tomb Raider* was captured by [DD3] using Contour, and used at least to make a trailer promoting the game at [E3]."). Rearden even cited Microsoft contracts and DD3's documents to prove that DD3 used MOVA to capture a second actor's performance for the Microsoft E3 trailer (*id.*, 7:15-19), and stated that DD3's use of MOVA to make the Microsoft E3 trailer was an infringement. *Id.*, 8:2-4 ("DD3 directly infringed Rearden's Contour copyright each time it used Contour to capture and process the performances of Luddington and Brooks, at least for the E3 Trailer …."). In Rearden's estimation, the evidence indicated that Microsoft had at least "collaborated" with others to make the E3 trailer (*id.*, 11:14, 20:12-15), and Rearden/HBSS did not hesitate to

acknowledge that "Microsoft appears to have played some role with respect to the E3 Trailer." *Id.*, 22:7-10.  To the extent HBSS would be ethically precluded from litigating this case because it implicates Microsoft for the E3 trailer, HBSS long ago crossed that proverbial line.

Finally, the parties participated in two mediation sessions on December 21, 2017 and November 28, 2018.  KK Dec., ¶ 2.  The parties exchanged mediation briefs before each session.  The attendees for the first session included (amongst others) Rearden's CEO, Steve Perlman, and each of Crystal's 30(b)(6) designees:  Richard Briggs (Crystal's Brand Director on *ROTTR*), David Kury (Crystal's Senior Producer who managed motion capture cinematics on *ROTTR*), and Jon Robbins (Crystal's Lead Character Technical Artist on *ROTTR*).  *Id.*

Crystal is not currently taking a position as to whether HBSS has a conflict that requires it to withdraw.  However, Crystal is skeptical and is concerned that the Motion has been brought for a strategic purpose because, while HBSS alleges that its representation of Microsoft is "ongoing" (Mot., 2:2-4) and that the purported conflict "has not been waived," (Notice of Motion, 1:6-11), nowhere does HBSS identify a single active case it is litigating for Microsoft or indicate that it sought Microsoft's waiver.  Nevertheless, if HBSS is correct that it has an ethical conflict, its delay in confronting that conflict has been unreasonable and the prejudice this will cause Crystal (*e.g.*, documents can be lost over time, memories can fade, litigation costs and fees go up, etc.) must be addressed.  Crystal told HBSS time and again that any use of MOVA was for the Microsoft E3 trailer, yet for ***two years*** HBSS ignored this fact and forged ahead with a paper-thin theory that Crystal used MOVA for *ROTTR* and repeatedly declined to seek discovery about the Microsoft E3 trailer.  A critical issue before this Court moving forward is to what extent, if any, HBSS' unreasonable delay is also attributable to Rearden.

### 2. *What Rearden Specifically Knew About the Microsoft E3 Trailer and When it Knew It is Important*

HBSS cannot and does not deny that it has known of the Microsoft E3 trailer and its relevance to this case for years.  What is somewhat less clear, is exactly what Rearden knew and when it knew it.  This is important because, if Rearden shared HBSS' disinterest in pursuing discovery into the Microsoft E3 trailer and also did not want to levy infringement allegations

against Microsoft, then Rearden's contemplated motion to amend is far less sympathetic. Because without some form of justification, Rearden would be just as culpable as HBSS for delaying the efficient progression of this case.

Steve Perlman–the CEO of Rearden LLC, which controls Rearden Mova LLC (D.I. 71, ¶ 1)–has been intimately involved in this case. Perlman has attended most hearings, all depositions of Crystal's 30(b)(6) witnesses, both mediation sessions, and even travelled to Crystal's counsel's office to review confidential Microsoft contracts produced in the litigation. KK Dec., ¶ 3. Given Perlman's prominent roles in his companies and this litigation, Crystal's references above to Rearden apply equally to Perlman.

Mr. Perlman (and hence Rearden) was likely made aware of the importance of the Microsoft E3 trailer more than a year ago. As noted above, over two years ago, Crystal sent HBSS an undesignated letter indicating that Luddington's tweet about MOVA was likely tied to the use of MOVA for a promotional trailer that Microsoft produced. Given the importance of that information, HBSS almost certainly shared it with Rearden via Mr. Perlman. But even if Rearden did not know of the letter initially, it was at least made aware of it over ***sixteen months ago*** when Crystal publicly filed and cited the letter in its First MSJ briefing and extensively discussed the Microsoft E3 trailer.[2] D.I. 76, 1:20-23, 2:3-8, n.2, 3:8-14, 4:9-24, 7:4-6, 11:23-12:10; D.I. 78, ¶ 4; D.I. 77-1. Crystal did not submit any of this briefing or the September 2017 letter under seal. And, in April 2018, Mr. Perlman submitted exhibits to his declaration that discussed "Microsoft E3 2014 press conference" and included ***embedded links*** to the Microsoft E3 trailer. D.I. 71-20, 2; D.I. 71-13, 3.

Following briefing on Crystal's First MSJ, Rearden and Mr. Perlman continued to receive additional information about the central role of the Microsoft E3 trailer through discovery. This Court issued its Order denying Crystal's First MSJ in June 2018 and gave Rearden the opportunity to obtain the discovery it told this Court that it needed to properly oppose MSJ. D.I. 83. As part

---

[2] Additionally, as noted earlier, even if HBSS did not specifically share the letter with Rearden in September 2017, a client is "considered to have notice of all facts known to their lawyer-agent." *Ringgold Corp.*, 880 F.2d at 114.

of that process, in November 2018, Mr.Perlman attended the deposition of each of Crystal's 30(b)(6) witnesses and heard for himself the testimony that the Luddington tweet was about a single MOVA session for the Microsoft E3 trailer—not the *ROTTR* videogame. D.I. 122-3, 60:4-61:11, 68:2-6, 73:2-77:6, 89:18-90:2, 96:2-24 (Briggs Dep. Tr.); *see also* KK Dec., Exs. D-F. Mr. Perlman also attended the December 21, 2017 mediation session, which each of Crystal's 30(b)(6) designees — Richard Briggs, David Kury, and Jon Robbins – also attended.

To summarize, Rearden, through its CEO, Mr. Perlman, has likely known since September 2017, and at very latest by November 2018, that the Microsoft E3 trailer was likely *the* central issue in this case. Yet Rearden never sought to amend its Complaint, never sought discovery from Microsoft, and never sought to depose Luddington about the Microsoft MOVA session (despite obtaining a Court order expressly granting Rearden permission to subpoena Luddington for deposition).

If Rearden intends to seek this Court's leave to amend its Complaint and add allegations regarding the Microsoft E3 trailer, it needs to justify why it should not be held responsible for the delay in bringing this theory forward. A sworn declaration (or testimony at the hearing on this Motion) from Mr. Perlman about the following facts could help illuminate the issue:

- When did Rearden first learn of the Microsoft E3 trailer?
- When did Rearden first learn of Crystal's September 2017 letter regarding Microsoft?
- When did Rearden first read or first become familiar with the substance of Crystal's arguments about the Microsoft E3 trailer in Crystal's May 2018 MSJ briefing?
- When did HBSS first tell Rearden that Microsoft was a former and/or current client?
- When did HBSS first tell Rearden that Microsoft's interests were adverse or potentially adverse to Rearden's?
- When, if ever, did HBSS tell Rearden that it could not or would not seek discovery from Microsoft?

- Did Rearden ever instruct HBSS to try to amend Rearden's Complaint to include allegations about Microsoft and/or the Microsoft E3 trailer? If yes, when?
- Did Rearden ever instruct HBSS to seek discovery from Microsoft concerning the Microsoft E3 trailer? If yes, when?

Testimony from Rearden on these questions would help clarify whether HBSS is primarily responsible for the delay in this case, or if Rearden played a role as well. If it is Rearden's position that HBSS is to blame for the delay, for example if HBSS hid the Microsoft conflict from Rearden or persuaded Rearden that discovery from Microsoft was unnecessary, then Rearden should have no problem supporting that argument with sworn testimony. But if Rearden tries to shield these facts from Crystal and this Court, it would suggest that Rearden may have been involved in HBSS' strategic decisions that have now greatly prolonged this case and unjustifiably run up Crystal's costs and fees.[3]

### B. The Court Should Retain Jurisdiction over HBSS for any Motion for Attorneys' Fees and/or Costs

If this Court ultimately allows HBSS to withdraw, it should retain ancillary jurisdiction over HBSS for purposes of any later motion by Crystal or former defendant Square Enix for fees, costs, or other appropriate remedies or sanctions. When the parties agreed to dismiss Square Enix, a condition of dismissal was that the Court would retain jurisdiction to hear any future motion for fees and costs. D.I. 177. Retaining ancillary jurisdiction is proper because HBSS has long been on notice that Crystal and Square Enix intend to seek its attorneys' fees and costs for Rearden and HBSS' exceptional handling of this case. Although it remains to be determined, Rearden may allege or even prove that HBSS was responsible for the unreasonable positions Plaintiffs took in litigating this case and for ignoring the evidence regarding the Microsoft E3 trailer. Whatever the outcome of Rearden and HBSS' dispute, Crystal may be able to hold HBSS jointly and severally

---

[3] The circumstances surrounding HBSS' Motion are complicated by its indication that it remains counsel for Rearden in its various related cases before this Court. Mot., 1, n.1. If HBSS is truly withdrawing against Rearden's wishes, it is surprising that Rearden is keeping them as counsel in other cases. This only underscores that this Court should require further answers from both HBSS and Rearden to ensure that there is no strategic element to the timing of HBSS' Motion.

10

liable for its attorneys' fees and or costs, and this Court can appropriately retain jurisdiction over HBSS for that purpose as it is well established that a federal court retains ancillary jurisdiction over attorneys' fees disputes collateral to the underlying litigation. *See, e.g.*, *FSLIC v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004) (collecting cases).

## IV. CONCLUSION

For over two years Crystal has been putting the issue of the Microsoft E3 trailer in front of Rearden and Rearden has spent that full two years assiduously ignoring this central issue of the litigation. That it has taken this long for Rearden to respond to this information is not Crystal's fault. Crystal respectfully requests that (i) in deciding HBSS' Motion, this Court ensure that Crystal is not further prejudiced by delay, protect it from a "redo," and otherwise resolve the scope of the case expeditiously; (ii) the Court retain jurisdiction over HBSS and (iii) have Rearden respond to the questions set forth above.

Respectfully submitted,

RIMON, P.C.

Dated: September 23, 2019  By: */s/ Karineh Khachatourian*
Karineh Khachatourian
Nikolaus A. Woloszczuk

Attorneys for Defendants,
CRYSTAL DYNAMICS, INC. and Non-Party SQUARE ENIX, INC.