# EXHIBIT B

JOSHUA M. MASUR  (SBN 203510)
 *jmasur@zuberlawler.com*
**ZUBER LAWLER & DEL DUCA LLP**
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

*Attorneys for Plaintiffs*
REARDEN LLC AND REARDEN MOVA LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

REARDEN LLC, and REARDEN MOVA LLC,
California Limited Liability Companies,

Plaintiffs,

v.

CRYSTAL DYNAMICS, INC., a California
Corporation,

Defendant.

No.  4:17-cv-04187-JST

**THIRD AMENDED COMPLAINT
FOR COPYRIGHT**

<u>**DEMAND FOR JURY TRIAL**</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  THE PARTIES .....................................................................................................3

III.  JURISDICTION AND VENUE .........................................................................3

IV.  FACTUAL ALLEGATIONS ..............................................................................4

    A.  The Contour program, systems, and methods ............................................4

    B.  The Contour intellectual property ...........................................................35

    C.  Rearden's use of the Contour program, system, methods in fifteen major motion pictures and one videogame cinematic trailer, and industry acclaim .......................37

    D.  Transfer of the Contour Assets to OnLive, Inc., OL2, Inc., and Rearden Mova.......39

    E.  Shenzhenshi's transparently false ownership claims .................................40

    F.  Defendant's unauthorized use of the Contour Assets................................42

PRAYER FOR RELIEF.................................................................................................56

DEMAND FOR JURY TRIAL .....................................................................................56

3125-1002 / 1706007.1

Plaintiffs Rearden LLC and Rearden Mova LLC (collectively, "Plaintiffs"), through their attorneys and for their claims against defendant Crystal Dynamics, Inc. ("Crystal"), allege as follows.

## I.      INTRODUCTION

1.      Crystal's *Rise of the Tomb Raider* videogame was released and distributed in the United States by Square Enix Inc. ("Square Enix") on November 10, 2015 on Xbox 360 and Xbox One, becoming the top-selling digital Xbox One game in the 2015 Christmas season[1]. In 2016, Windows and Playstation 4 versions were released as well. The Tomb Raider franchise is known for both highly successful videogames and live action movies, and each successive version of the game has furthered the realism of the lead character, Lara Croft, particularly in approaching a photorealistic human CG (computer graphics) face. Brian Horton, Crystal's *Rise of the Tomb Raider* Game Director said:

> "Because Tomb Raider is all about Lara [Croft] and her journey we always want to make her feel as human and believable as possible."[2]

2.      Actress Camilla Luddington had starred as Lara Croft in the prior Tomb Raider franchise game in 2013. Ms. Luddington reprised her role in *Rise of the Tomb Raider*, but this time Crystal wanted Ms. Luddington's Lara Croft character to achieve a level of CG face photorealism never before achieved in a videogame. Crystal turned to an innovative, soon-to-be Oscar-winning, Visual Effects ("VFX") technology called Contour Reality Capture, which transferred every human subtlety of facial motion to the CG Lara Croft face. Ms. Luddington described systems and methods of the Contour system:

> "In the previous [2013 Tomb Raider] game we were using the dots on your face which is about 90 points of reference. With MOVA it's a fluorescent paint that gets airbrushed onto your face. It takes about 45 minutes. You can't see it under natural light, but if you go under black light you are able to see it. And, it's around 7,000 points of reference. So, it's a much more realistic and the capture is just unbelievable, and

---

[1] Seeto, Damian, "Rise of the Tomb Raider Was The Top Selling Digital Xbox One Game This Christmas", December 26, 2015, Attack of the Fanboy. https://aotf.com/news/rise-tomb-raider-top-selling-digital-xbox-one-game-christmas/

[2] "Building Lara's Model", Square Enix E3 Conference 2015. June 16, 2015. https://youtu.be/7GWfwLvlqZ8

1     you'll see a lot more of that in the second game [*Rise of the Tomb
2     Raider*].[3]

3   Added Kam Yu, Crystal's Lead Character Animator:

4     "We're able to capture the nuances of facial movement, and she [Lara
5     Croft] really comes to life."[4]

6   Videogame technology review site Eurogamer.net praised the resulting quality of the Contour-

7   derivative CG faces in *Rise of the Tomb Raider* (emphasis added):

8     "The cut-scene sequences present in Rise of the Tomb Raider offer
       some of the most impressive visuals in the game. The mix of natural
9     motion, high quality post effects, and realistic materials really helps
       sell these sequences. **Actors and actresses were captured using the**
10    **Mova performance capture system which uses a paint system**
       **rather than the traditional pasted white balls to track expressions.**
11    This data is then fed into the engine which makes use of blendshapes
       rather than the traditional bone structures. Blendshapes work by
12    breaking up key expressions into individual shapes which can be
       animated in various combinations enabling a very natural performance.
13    **The results are mighty impressive and created some of the most**
       **nuances cinematic sequences we've seen to date."**[5]

14

15       3.      But neither Ms. Luddington, nor defendant Crystal ever mentioned that the acclaimed

16   cutting-edge digital Contour technology that made the photorealistic Lara Croft CG face possible

17   was stolen from its inventor and developer, Rearden LLC, and its owner Rearden Mova LLC.  Nor is

18   it ever mentioned that although Crystal had contracted with Rearden and its controlled entities in

19   using Rearden-developed videogame technology in the promotion, sale, operation of prior

20   videogames, including Crystal-developed prior *Tomb Raider* franchise games, Crystal nonetheless

21   secretly contracted with the thieves to use the stolen Contour facial performance capture technology

22   in *Rise of the Tomb Raider*.

23

24

25

26     [3] Graham, Jefferson, "USA Today Tech Celebrities Talking Tech: Camilla Luddington Talking
     about MOVA", USA Today, September 4, 2014. https://youtu.be/lwZOUzuv63k

27     [4] "Building Lara's Model", op. cit.

28     [5] Linneman, John, "Tech Analysis: Rise of the Tomb Raider", Eurogamer.net, November 11,
     2015. http://www.eurogamer.net/articles/digitalfoundry-2015-rise-of-the-tomb-raider-tech-analysis

4.      And, nowhere is it mentioned that *after* Rearden and Rearden Mova were in widely-reported litigation against the Contour thieves, Crystal continued to use the Contour capture output in creating the Lara Croft CG face and then released multiple versions of the *Rise of the Tomb Raider* game from November 2015 through October 2016 which Square Enix distributed throughout the United States. Throughout this entire time, Crystal never bothered to contact its longtime videogame technology, promotion and sales partner Rearden LLC to ask any questions or to verify authorization to use the Contour program, system, methods, trade secrets, or trademarks that Crystal knew Rearden owned.

5.      Crystal used the stolen Contour program, systems and methods to create, and subsequently authorized and benefitted from the reproduction and distribution, and authorized performance and display of, *Rise of the Tomb Raider* in knowing or willfully blind violation of Rearden Mova LLC's intellectual property rights.  This case seeks all just and equitable copyright remedies on behalf of the inventors, authors, and owners of the Contour program, systems, and methods, plaintiffs Rearden LLC and Rearden Mova LLC.

## II.      THE PARTIES

6.      Plaintiff Rearden LLC ("Rearden") is a California limited liability company having its principal place of business at 355 Bryant Street, Suite 110, San Francisco, California 94107.

7.      Plaintiff Rearden Mova LLC ("Rearden Mova") is a California limited liability company having its principal place of business at 355 Bryant Street, Suite 110, San Francisco, California 94107.  Rearden Mova is wholly owned by Rearden.

8.      Defendant Crystal Dynamics ("Crystal") is a California corporation, having its principal place of business at 1600 Seaport Blvd., Suite 500, Redwood City, California, 94063.

## III.      JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (patent and copyright jurisdiction).

10.      This Court has general personal jurisdiction over Crystal because its principal places of business is in the State of California and it has the capacity to sue and be sued in the State of

1    California.  And this Court has specific personal jurisdiction over Crystal because it has committed

2    acts in the State of California that give rise to all claims of infringement asserted herein.

3        11.    Venue is proper for plaintiffs' copyright infringement claims against Crystal under 28

4    U.S.C. § 1400(a) and 1391 (b), (c) and (d).  Crystal authorized the reproduction, distribution,

5    performance, and display of *Rise of the Tomb Raider* throughout this judicial district.

6        12.    Venue is proper for plaintiffs' patent infringement claims against Crystal under 28

7    U.S.C. § 1400(b).  Crystal is incorporated in the State of California, and its principal place of

8    business is located in this judicial district.

9                        **IV.    FACTUAL ALLEGATIONS**

10   **A.    The Contour program, systems, and methods**

11       13.    The technology at the core of this case includes Contour Reality Capture ("Contour")

12   technology that was conceived, developed, and authored by plaintiff Rearden and is currently owned

13   by plaintiff Rearden Mova.

14       14.    Contour (http://www.rearden.com/mova.html) is one of many technologies incubated

15   and offered by Rearden (www.rearden.com), a San Francisco Bay Area company founded in 1999 by

16   Steve Perlman as an incubator for fundamental technology, creative works, and their interplay.

17       15.    Contour is the fourth performance motion capture technology that Rearden has used

18   in film and videogame production since its founding 19 years ago.  Facial performance motion

19   capture, as both a technology and a tool for motion picture and videogame production, falls squarely

20   within the focus of Rearden's business.  Rearden practices all of its technologies and inventions,

21   either directly or indirectly by spinning off Rearden entities to use its technologies and inventions.

22   Despite holding a global portfolio of hundreds of its own patents, Rearden has never been in the

23   business of licensing third parties to practice its technologies and inventions, and it has never

24   licensed nor sought to license any of its technologies, inventions, patents, copyrights, or trademarks.

25   Rearden's intellectual property portfolio exists only to protect Rearden's product and services

26   offerings, and neither Rearden nor any of its controlled entities has ever previously sued any other

27   person or entity for patent or copyright infringement.

28

16.     Mr. Perlman previously worked as Principal Scientist at Apple where he developed, among many other technologies, the multimedia underpinnings of the color Macintosh as well as QuickTime. He left Apple for two startups that later went public, and designed and co-founded WebTV, which was later acquired by Microsoft. Microsoft named Perlman President of a new Silicon Valley division focused on television products, which ultimately developed Microsoft's cable, satellite, IPTV and Xbox 360 systems. Perlman left Microsoft in 1999 and self-funded a technology incubator and visual effects production studio in San Francisco called Rearden, Inc. (now Rearden LLC). Rearden focused largely on developing fundamental media-related technologies whose development times (e.g. 5 to 15 years) are beyond the horizon of venture capital and corporate research and development.  Perlman has operated Rearden continuously through to this day.  He is a prolific inventor.  Perlman is a named inventor on over 500 patents worldwide, and among his many innovations are the following:

- The underlying technology for QuickTime (the video streaming technology for iPhone, iPad, iPod and Mac and much of the multimedia technology for Apple);

- The underlying technology for many of Microsoft's video products;

- OnLive cloud gaming technology;

- Contour facial capture technology;

- Artemis pCell wireless technology; and

- A wide range of other technologies in other fields, including medical and national defense life-saving technologies, often in cooperation with the U.S. government and U.S. agencies, sometimes not publicly disclosed.

17.     A major technology focus of Rearden from its 1999 founding to this day is "performance motion capture," a production technology typically used to create a 3D animated character in a movie or a videogame that moves exactly like a human performer. In 2000, Rearden began offering motion capture services for movies and videogames (through wholly-owned subsidiaries Rearden Studios and then MOVA LLC) using existing commercial "marker-based" motion capture systems that could capture and track body ("skeletal") motion, but there was no

5

Case No. 4:17-cv-04187-JST

known technology at that time that could capture and track the subtleties of human facial motion in a

realistic, life-like manner, despite an urgent need:

> "The state of the art [before Contour] was … marker-based motion capture…we looked at a number of other films at the time that were using facial marker tracking…as you can see, it gives you a pretty crappy performance… What we realized was that what we needed was the information that was going on between the markers. We needed the subtleties of the skin. We needed to see skin moving over muscle moving over bone. We needed creases and dimples and wrinkles…" [6]

Rearden set out to invent and perfect a photorealistic facial motion capture and tracking system.

18.     Over the next five years, Rearden's technical team—including brilliant, talented, and

highly creative engineers, programmers, and visual effects artists—tried dozens of different

approaches to solve the problem.  Years of experimenting, testing, trials, failures, sweat of the brow,

expenditure of millions of dollars, and finally stunning breakthroughs, ultimately led to the

conception and perfection of a solution to the long-felt need—a technology that precisely captures

and tracks the 3D shape and motion of a human face to sub-millimeter precision, producing

photorealistic results. Rearden branded the technology Contour Reality Capture, and offered it to the

videogame and motion picture industries. The solution was comprised of a complex apparatus and

methods for capturing facial performances, and wholly original software that operated the apparatus

and subsequently processed the performance captures into works that could be used by effects

studios to animate CG characters.  This innovative technology was recognized in the motion picture

industry as revolutionary:

> "Contour's promise is enormous," [Director David] Fincher said, "The notion that the human face in all its subtleties could be mapped in real time and such density of surface information opens up so many possibilities for both two- and three-dimensional image makers and story-tellers."

> "I live in this environment, and I see stuff every day, so I get a little jaded," said [then Digital Domain Senior VP and Executive Producer Ed] Ulbrich… "Other developments have been gradual, more evolutionary than revolutionary. Contour separates the performance

---

[6] Ulbrich, Ed (former Digital Domain CEO), "How Benjamin Button Got His Face" TED Talk, Feb 2009. https://www.ted.com/talks/ed_ulbrich_shows_how_benjamin_button_got_his_face.

Case No. 4:17-cv-04187-JST

THIRD AMENDED COMPLAINT

3125-1002 / 1706007.1

from the photography. It's a substantial turning point in the business, and I think it will change how picture are made."[7]

19.    Contour's technical breakthrough was introduced at the Special Interest Group on Computer Graphics and Interactive Techniques ("SIGGRAPH") Conference on July 31, 2006 to wide acclaim, including photographs of Contour's systems and methods on the front page of the *New York Times*[8], page B1 of the *Wall Street Journal*[9], and *The Hollywood Reporter*, among other publications. Mr. Perlman was invited to present MOVA Contour technologies and their practical applications in movie production to the Directors Guild of America[10]. And he was invited on many occasions to give public presentations on MOVA Contour and the development process that led to its invention, for example in a speech at Columbia University[11].

20.    The following photograph[12] from an article in *The Hollywood Reporter* on the day Contour was unveiled—July 31, 2006—was directed to movie and videogame industry professionals and illustrates several Contour program output works, which are described in further detail later in subsequent allegations:

---

[7] Marlowe, Chris, "Contour mapping intricate detail: Mova revolutionizing motion-capture process with new system," The Hollywood Reporter, July 31, 2006, http://www.rearden.com/press/2006/Contour-HollywoodReporter-060731-2.pdf.

[8] Markoff, John, "Camera System Creates Sophisticated 3-D Effects", New York Times, July 31, 2006. https://nyti.ms/2uAfwGF.

[9] Wingfield, Nick, "Digital Replicas May Change Face of Films", July 31, 2006. http://on.wsj.com/2teIRbO.

[10] "'Facial Performance Capture for Photoreal Digital Characters' Presented by Steve Perlman, Founder & President, Mova", Digital Day 2007: The Future of the Future, Directors Guild of America, July 28, 2007. http://ishindler.com/articles/DGA_Digital_Day_flyer07.pdf.

[11] https://youtu.be/1QxrQnJCXKo.

[12] Marlowe, op. cit.

3125-1002 / 1706007.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



21.     Also on July 31, 2006, the following photographs appeared in a *New York Times* article directed to a general readership audience, which illustrate an application of the phosphor-based makeup used in Contour facial motion capture methods:



Actors must cover themselves with makeup containing phosphorescent powder for Contour, a system that can create 3-D effects. Austin Hice

Case No. 4:17-cv-04187-JST

3125-1002 / 1706007.1

THIRD AMENDED COMPLAINT

and three Contour program output works (this photograph appeared on the front page):[13]



An actress goes from live performance, left, to phosphorescence, to a Contour-generated image, right. Mova.com

22.    Also on July 31, 2006, the following photograph appeared in a *Wall Street Journal* article directed to a general readership audience, which illustrates the same three Contour program output works with "non-technical reader" annotations for each image (the web version of the article included a video that showed the three output works in motion):[14]



① Contour cameras film the movements of an actress wearing glow-in-the-dark makeup

② Cameras capture a series of raw 3-D images defined by the makeup

③ The digital version of the actress is completed with skin and clothing textures

---

[13] Markoff, op. cit.

[14] Wingfield, op. cit.

23.     In one embodiment, Contour uses an array of cameras whose shutters are synchronized to strobing white lights and ultraviolet lights in conjunction with phosphor-based makeup applied to the performer in random patterns, with the entire system controlled by highly-advanced, original, and proprietary Contour program that operates the Contour system in real time to capture an actor's performance frame-by-frame, and then processes the capture into original Contour program output works based on the captures.

24.     The Contour system is controlled, and the captured camera images are processed, by several computers running the Contour program. Part of the program operates prior to a facial performance capture session to prepare and calibrate the Contour system.  Part operates in real-time during a live facial performance capture.  And part operates after the facial capture to process the captures into works that can be used to animate CG characters. The Contour program produces several types of output works, some of which are used by the Contour program itself for further processing, and some are used for animating a CG face in a movie or videogame.

25.     One embodiment of the operation of the Contour program, system, and methods is described in the following page from a Contour brochure below, distributed at computer graphics and entertainment industry conferences:

3125-1002 / 1706007.1

# HOW IT WORKS

## PREPARATION



Preparation is completed in under an hour. The actor's skin is sponged with an FDA-approved phosphorescent makeup, either alone or mixed with skin-tone base color. Cloth can also be treated with a phosphorescent dye.

## LIGHTS



The Contour capture system is portable, and can be set up on any light-sealed stage. The stage is then lit with custom Kino Flo fluorescent fixtures. Because the lights are flashed on and off at 90 to 120 frames per second (i.e. beyond human perception), the stage appears steadily lit to the eye.

## CAMERAS



**Two sets of cameras are placed around the stage area:**

*Color cameras* capture normally-lit surfaces only when the lights are on. This provides the reference video used for previews.

*Geometry cameras* capture phosphorescent patterns (embedded in the makeup or cloth dye) only when the lights are off.

## ACTION



**Live Performance:** Contour enables true "digital directing." Subjects are able to move freely within the capture volume. Color cameras capture normally-lit surfaces, providing reference video from three or more cameras.



**Capture Process:** Our cameras capture every surface detail where phosphorescent makeup is applied. It's like having millions of invisible markers. Wrinkles, dimples, lips, nostrils—every subtle detail is captured in motion.



**Captured Surface:** The recorded phosphorescent patterns are then correlated to produce a high-resolution surface geometry—100,000+ polygons per scene.



**Tracked Surface:** Contour tracks your optimal number of surface points from frame to frame and shot to shot. Tracked points are specified by the client after the capture session and placed wherever required. Tracked points can be added, moved and retracked, utilizing the same capture data.

**For more information, or to contact us, visit www.mova.com. The MOVA studio is located in San Francisco, CA.**

Copyright MOVA® LLC 2006–2008. MOVA is a registered trademark and Contour is a trademark of MOVA LLC. Patents Pending.

3125-1002 / 1706007.1

Case No. 4:17-cv-04187-JST

THIRD AMENDED COMPLAINT

26.    **Preparation:** Phosphor-based makeup (various types of phosphor are supported) is applied in a random pattern on the performer's face, neck, etc.—whatever body surfaces are intended to be captured—typically using an airbrush, sponge or cotton swab.

27.    **Lights:** The performer sits or stands in the arc-shaped Contour apparatus in a light-sealed stage. One part of the Contour program causes white lights and ultraviolet lights to be flashed so rapidly that the flashing is beyond human perception and it appears to the performer and observers that the white and ultraviolet lights are on steadily.

28.    **Cameras:** One part of the Contour program causes the shutters on two pluralities of cameras, distributed around the apparatus, to open and close synchronously with the flashing of the lights such that:

    (a)    a first plurality of cameras open their shutters when the white lights are on, illuminating the natural skin color of the performer; and

    (b)    a second plurality of cameras open their shutters when the white lights are off and the phosphor-based makeup is emitting random patterns of light.

29.    **Action:** The performer provides her or his facial performance while one part of the Contour program causes the output of each of the plurality of cameras to be recorded onto storage devices. The output works of the two pluralities of cameras are illustrated in each half of the face in the "Capture Process" section of the brochure reproduced above.

    (a)    the output of the first plurality of cameras is called the "**Skin Texture**" and it looks like normal skin and facial features of the performer from multiple angles, largely without visible makeup, and

    (b)    the output of the second plurality of cameras is called the "**Makeup Pattern**" and it looks like a random pattern of green or blue largely without showing the skin or other facial features (e.g. eyes or mouth) of the performer.

30.    Part of the Contour program processes the Makeup Pattern output work to create a high-resolution 3D surface that moves in the shape of the skin of the performer with sub-millimeter precision. This output work is called the "**Captured Surface**" and, rendered on a display, it looks

3125-1002 / 1706007.1

like a 3D bust of the performer's skin in motion. A still frame of a Captured Surface work is shown in the "Captured Surface" section of the brochure reproduced above.

31.     The same part of the Contour program processes the Makeup Pattern output work to create a high-resolution 3D mesh that tracks points on the skin of the performer in 3D as the skin moves from frame-to-frame. This output work is called the "**Tracking Mesh**" and, rendered on a display, it looks like a 3D mesh that exactly follows the movement, stretching and wrinkling, etc., of the skin as the performer moves her or his face. A still frame of a Tracking Mesh work is shown in the "Tracked Surface" section of the brochure reproduced above. The Tracking Mesh work tracks the subtleties of the performer's facial motion with sub-millimeter precision. For example, if the performer's expression causes the cheeks to bulge out from a smile, the points on the 3D mesh tracking the cheek will bulge out in exactly the same 3D shape. If the forehead furrows into wrinkles, then the points on the 3D mesh tracking the forehead will furrow into wrinkles in exactly the same 3D shape. The Tracking Mesh work can be configured to be at any resolution, whether thousands or even millions of points, depending on the level of tracking detail required by the project. An example of a Tracking Mesh work tracking skin deformation from an extreme expression is shown here:



Case No. 4:17-cv-04187-JST

THIRD AMENDED COMPLAINT

3125-1002 / 1706007.1

32.     The Contour program's output works specified above can be used for many different applications. Often they are used for "retargeting" the performer's face onto another 3D model of a face, either a real face (e.g. when Rupert Grint (Ron Weasley) transforms into the face of Daniel Radcliffe (Harry Potter) in *Harry Potter and the Deathly Hallows, Part I*), or a fictional face (e.g. Mark Ruffalo's face transforms into the Hulk's face in *The Avengers*, Brad Pitt's 44-year-old face retargeted to an 87 year-old version of his face in *The Curious Case of Benjamin Button*), or Jeff Bridge's face retargeted in *TRON: Legacy* (2010) to his 28 year-younger face as it appeared in *TRON* (1982).

33.     When the retargeting is from a first performer's real face to the real face of a second performer, then each performer's face is captured by the Contour system, with output works created by the Contour program for each performer. The Captured Surface, Tracking Mesh, Makeup Pattern, and Skin Texture output works can be used in the construction of a 3D model of the face of the second performer, and then the Tracking Mesh work of the first performer is used to animate the 3D model of the second performer's face. The result is a 3D model of the face of the second performer that is animated by the motion of the first performer's face. For example, the photograph below shows a man (the "second performer") captured by the Contour program, system, and methods. The 3D model of a CG head (center) was generated from the Contour program output works, including the Makeup Pattern (left) and Tracking Mesh (right) works:

THIRD AMENDED COMPLAINT

3125-1002 / 1706007.1

34.     The photograph below shows the performance of the woman (the "first performer") in the brochure reproduced above (showing her Skin Texture (left) and Tracking Mesh (right) Contour output) works retargeted to the man's CG head in the above photo by retargeting the points on her Tracking Mesh work to the 3D model of the man's CG head. As you can see in her Live Performance (showing the Skin Texture output work, below left), her facial expression causes the man's CG head to track her facial expression. Contour's Tracking Mesh work is so precise that a high degree of realism is maintained, even though the man's CG face and head have a very different shape and size than hers, and he is male and she is female. In fact, Contour output works capture the woman's performance with such fidelity that observers of the animation have commented that despite the fact that the man's CG face clearly has a male *shape*, the *motion* appears to be that of a female face. The video of this and other Contour examples is available on Rearden's home page (www.rearden.com, click on the MOVA logo and click on the video), or directly (www.rearden.com/mova.php or https://vimeo.com/86130623):



35.     A similar retargeting process can be performed with a fictional head. For example, the two photographs below are of a performer whose face was captured in the Contour system showing the Skin Texture output work on the left and how she appeared to the naked eye (or a conventional camera), showing the Makeup Pattern work combined with Skin Texture work on the right:



36.     The photograph below shows several views of a CG model of the head of a videogame character that was created by an artist:



Although the head looks almost photoreal (it was only a test, not a polished CG model) when it is in a neutral pose and immobile, if the face were animated—whether through hand-drawn animation or prior art motion capture techniques—any photorealism would be lost because the human eye and brain are precisely attuned to notice any unnatural imperfection in facial motion. But, by using the Contour system and methods and the Contour program, every subtle motion of the human face is

3125-1002 / 1706007.1

captured with sub-millimeter precision, producing output works that retain that precision and can be retargeted to any fictional CG head, bringing it to life.

37.    The photographs below show the above videogame character's head in two expressions retargeted from the Tracking Mesh work generated by the Contour program from the Contour facial capture of the above actress. Although the photorealism of the motion cannot be seen in static photographs, the motion is realistic and life-like, despite the fact that the performer's face is a very different shape than that of the CG head. Even in a static image, however, one can see how the expressionless CG model tracked the good-natured expression of the actress:





3125-1002 / 1706007.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38.     A 3D "wireframe" (a mesh of 3D points) of the retargeted CG Character's head is shown below, separately and overlaid upon the rendered image, and then the final rendered image:







3125-1002 / 1706007.1

39.     In summary, the Contour program transforms the facial performance of a live performer, capturing the most subtle of facial motions with sub-millimeter precision to animate with realism the life-like motion of faces of CG characters that appear in a finished movie, videogame, or other production. The process begins by airbrushing or otherwise applying a random pattern of phosphor-based makeup on a performer, having the performer sit or stand in the arc-shaped Contour apparatus surrounded by an array of white lights and ultraviolet lights and two pluralities of cameras, with the lights flashed rapidly and synchronized with the camera shutters as Skin Texture and Makeup Pattern works are created by the Contour program. The Contour program then processes the Makeup Pattern work to create thousands or even millions of points in 3D as the performer's face moves, producing precise Captured Surface and Tracking Mesh works. Thus, the Contour program produces output works that include the following:

- **Skin Texture**, showing the normal skin and facial features of the performer from multiple angles, largely without visible makeup, in color
- **Makeup Pattern**, showing the random pattern of makeup on the performer from multiple angles, largely without visible skin or facial features, in grayscale
- **Captured Surface**, a high-resolution moving 3D surface in the shape of the performer's skin as the performer's face moves
- **Tracking Mesh**, a high-resolution 3D mesh that exactly tracks the movement, stretching, wrinkling, etc. as the performer moves their face.

The Tracking Mesh work can then be retargeted to a CG face, animating it with photorealistic and natural motion, thereby precisely preserving every subtlety of human expression by the performer in the final movie, videogame, or other production.

40.     The Contour program includes a security mechanism that automatically affixes notice of Rearden's Contour program copyright to Skin Texture and Makeup Pattern output works, an example of which is shown in the three images below from a *Beauty and the Beast* Contour capture of performer Dan Stevens. The first and second groups of images below show the first and second frames, respectively, of the 3 color Skin Texture and 22 grayscale Makeup Pattern works. The first frame contains the copyright notice, year, date and time of the capture and technical Contour capture

information; the second frame (and all subsequent frames) shows the performer's frame-by-frame capture by the Contour program from the angle of each camera in the Contour apparatus.  The third image below is an enlargement of the first frame of one Skin Texture output work, showing the copyright notice which reads, "Copyright 2016 - Rearden LLC", and also includes the date and time of the Contour capture session: "Tue, Jun 14, 2016 - 09:41:16". The date and time stamping notifies any Contour program end-user that the copyright of the Contour program is controlled by Rearden LLC as of the date and time of the Contour capture. Since the end-user would not have access to the copyright notices embedded into the Contour program's source code, the current-year copyright notice serves as *express notification that Rearden LLC is asserting its copyright in the Contour program.* This copyright protection feature affixed copyright notice on every Contour program Skin Texture and Makeup Pattern work from the date of the Contour program theft in early 2013 until this Court's Preliminary Injunction Order[15] went into effect on June 17, 2016, finally halting use of the stolen Contour program. The below Contour capture was time-stamped on June 14, 2016, evidencing that the stolen Contour program was still in use by at least The Walt Disney Company three days before the Injunction Order in *Shenzhenshi, et al. v. Rearden, et al.*. From its theft in 2013 through the June 17, 2016 Injunction Order, many thousands of Contour program works were created for movies and videogames using the stolen Contour program, each affixed with "Copyright [current date] - Rearden LLC" and the date and time of the capture.

---

[15] *Shenzhenshi, et al. v. Rearden, et al.,* NDCA Case No. 15-797, Dkt. 188



THIRD AMENDED COMPLAINT

3125-1002 / 1706007.1

41.     Within days after the Contour program, system and methods were unveiled at SIGGRAPH in 2006, tests and production began on one of the first movies utilizing Contour, *The Curious Case of Benjamin Button.* The movie was released in 2008. The photorealistic reverse-aging of Brad Pitt's face from an 87-year-old man backwards to his then-age of 44, and then further backwards to a younger age, was widely lauded as a visual effects ("VFX") milestone, the first ever photorealistic CG face, winning an Academy Award for Best Visual Effects for the team at the VFX production company, Digital Domain, which had hired Rearden to operate the Contour system to capture Brad Pitt's face and generate Contour program output works for the film.

42.     In a widely-viewed TED (Technology, Entertainment, Design) Talk entitled, "How Benjamin Button Got His Face," Ed Ulbrich, then Digital Domain's Senior VP and Executive Producer (subsequently the CEO of successor Digital Domain 3.0, Inc.), confirmed that *The Curious Case of Benjamin Button* would have been "impossible" to make but for the Contour system and methods and the unprecedented facial capture precision and subtlety of the Contour program's output works. Ulbrich stated in the talk:

> "We first got involved in *The* [*Curious Case of Benjamin Button*] project in the early 90s.... We took a lot of meetings and we seriously considered it. But at the time, we had to throw in the towel. **It was deemed impossible**. **It was beyond the technology of the day to depict a man aging backward**... The project came back to us a decade later.... **we came across a remarkable technology called Contour**…creating a surface capture as opposed to a marker capture…**This was when we had our 'Aha!' This was the breakthrough**…we could put Brad [Pitt] in this [Contour] device, and use this Contour process, and we could stipple on this phosphorescent makeup and put him under the black lights, and we could, in fact, scan him in real time… effectively, we ended up with a [Contour program output file] 3D database of everything Brad Pitt's face is capable of doing…we could transpose the [Contour program output file] data of Brad at [then-aged] 44 onto [a 3D model of] Brad at 87. So now, we had a 3D database of everything Brad Pitt's face can do at age 87, in his 70s and in his 60s."[16]

43.     In the TED Talk, Ulbrich showed details of the Contour system and methods, Contour program output works, and how the CG face of Benjamin Button in the final movie was derived from

---

[16] Ulbrich, op. cit. (emphasis added).

the Contour program output works. The following paragraphs describe still frames from the TED talk (labeled by "Minutes:Seconds" from the start of the video).

44.    **9:43:** The branded Contour apparatus, a semicircle of two pluralities of cameras with synchronized white and ultraviolet lights surrounding a performer, with Rearden's Mova LLC staff operating the Contour system:



45.    **10:11:** On the left, Contour program **Skin Texture** output work, showing the performer's natural skin color and facial features. On the right, a performer with conventional motion capture markers on her face:

3125-1002 / 1706007.1

1
2
3
4
5
6
7
8
9
10
11



12    46.    **10:17:** On the left, Contour program **Tracking Mesh** output work, showing hundreds

13  of thousands of points in 3D, the Tracking Mesh work's resolution is so high that the points can only

14  be seen by zooming in. In contrast, conventional marker-based resolution is shown on the right:

15
16
17
18
19
20
21
22
23
24
25
26



27    47.    **10:20:** On the left the Contour program **Captured Surface** work, showing high-

28  resolution surface geometry. In contrast, marker-based facial capture surface geometry on the right:

1
2
3
4
5
6
7
8
9
10
11



12  48.   **10:39:** Contour program **Makeup Pattern** work, showing random patterns from

13  glowing phosphor-based makeup. Each of the four Contour facial captures of Mr. Pitt was a separate

14  motion facial performance used for a different facial expression of Benjamin Button. The Contour

15  program created high-resolution **Captured Surface** and **Tracking Mesh** works from each of these:

16
17
18
19
20
21
22
23
24
25
26
27
28



3125-1002 / 1706007.1

49.    **10:49:** Contour program **Makeup Pattern** works, showing how many Contour output works were used. Each of the Contour facial captures was a separate motion facial performance of Mr. Pitt used for a different facial expression of Benjamin Button. The Contour program created high-resolution **Captured Surface** and **Tracking Mesh** output works from each of these, creating a database of Capture Surface and Tracking Mesh output works:



50.    **12:33:** Contour program **Makeup Pattern** work (left), **Captured Surface** work (middle), retargeted **Captured Surface** and **Tracking Mesh** works to a fictional aged head (right), are shown below. The 3D points of the Contour **Tracking Mesh** work of Mr. Pitt's actual face were retargeted to corresponding points on the 3D fictional "maquette" (i.e. hand-made 3D bust) of Mr. Pitt at age 87. As a simple example, the point on the right corner of Mr. Pitt's actual mouth could correspond to the point on the right corner of the 3D maquette's mouth. As Mr. Pitt's smile widens during the Contour capture session, moving the tracked point on the corner of his mouth outward, the retargeted point on the 3D maquette's mouth would move proportionately outward causing the 87-year-old smile to widen. As described by Mr. Ulbrich: "[Left:] This is Brad doing one of the [character expression] poses. [Middle:] And here's the resulting [**Captured Surface** work] data that comes from that, the model that comes from that. [Right:] Retargeting is the process of transposing

that [**Captured Surface** and **Tracking Mesh** work] data onto another model. And because the life cast, or the bust—the maquette—of Benjamin was made from Brad, we could transpose the [**Captured Surface** and **Tracking Mesh** work] data of Brad at 44 [years] onto Brad at 87[years]. Effectively, we ended up with a [**Captured Surface** and **Tracking Mesh** work] 3D database of everything Brad Pitt's face is capable of doing…we could transpose the [**Captured Surface** and **Tracking Mesh** work] data of Brad at [then-aged] 44 onto [a 3D maquette of] Brad at 87. So now, we had a 3D database of everything Brad Pitt's face can do at age 87, in his 70s and in his 60s":



51.     **17:18:** On the left is 87-year-old fictional head maquette Tracking Mesh work retargeted from a Contour program **Tracking Mesh** work, with a pair of glasses added in as a prop. The final CG face is shown on the right after various steps such as texturing and lighting that is applied to the maquette. The resulting CG face is integrated into the live-action footage of the final scene:



52.     The photorealistic reverse-aging derived from the Contour system, methods and output works received wide acclaim when *The Curious Case of Benjamin Button* was released in December of 2008 and on February 22, 2009 won an Academy Award for Best Visual Effects for the photorealistic face based on Contour output. Shortly thereafter the credibility gained from the Academy Award brought in new Contour projects from studios. Contour had been used in one other movie in 2008, *The Incredible Hulk*, which demonstrated how, in addition to transforming an actor's age, the same Contour output can be used for many other VFX purposes, such as transforming an actor's face into a creature.

53.     As shown, above, Contour output works can be used to create photorealistic CG faces in a videogame. Since introducing Contour in 2006, Rearden and its controlled companies have been promoting Contour's ability to bring photorealism to videogame CG faces. At the 2008 Game Developer Conference ("GDC08")—the largest conference for videogame developers—Rearden-

3125-1002 / 1706007.1

controlled companies demonstrated Contour-based CG faces running in real-time. The below

photograph is from an article written about the demonstration[17]:



54.     Rearden and its controlled companies have continuously promoted Contour's ability

to bring realism to videogames, for example, on Rearden's home page at www.rearden.com (click on

the MOVA logo and click on the video), or directly at www.rearden.com/mova.php  or at

https://vimeo.com/86130623 . A still from the current Rearden website video is below, showing a

CG face created from Contour output works that is running in real-time in the popular Unreal "game

engine" (a software framework videogames are built upon):



---

[17] Orland, Kyle. "GDC08 exclusive: MOVA brings lifelike motion capture to Unreal Engine 3",
Engadget, February 19, 2008. https://www.engadget.com/2008/02/19/gdc08-exclusive-mova-brings-
lifelike-motion-capture-to-unreal-e/

3125-1002 / 1706007.1

55.     Contour program output works also have been used to create photorealistic CG faces for animated videos used to promote videogames. For example, *Batman: Arkham City* (2011)[18] used Contour systems and methods, operated by Rearden and Rearden-controlled companies. The four photographs below are still frames of Contour program output works.

Skin Texture Output



Tracking Mesh Output



Captured Surface Output



CG Face from Retargeted MOVA Contour Output



---

[18] "Batman: Arkham City - Behind The Scenes Of The Cinematic Trailer", October 23, 2011, https://youtu.be/oPYM4TG0oXM

3125-1002 / 1706007.1

56.     Defendant Crystal knew that Contour program output works could be used to create photorealistic CG faces. From 2008 to 2012, not only was Crystal an attendee at the industry videogame conferences such as GDC08 where Rearden-controlled companies promoted Contour's use in creating photorealistic CG faces for videogames, but Crystal was a business partner of a Rearden-controlled company, utilizing Rearden-developed technology within their videogames (including Crystal-developed prior *Tomb Raider*-franchise games), under contracts that provided for sharing a percentage of the retail price of all Crystal games using Rearden's technology. Before entering into business with the Rearden-controlled company and using Rearden technology in its videogames, Crystal performed an intellectual property due diligence to confirm that Rearden and its controlled companies owned the videogame technology.

57.     The following four photographs show the arc-shaped Contour apparatus, two pluralities of synchronized cameras, white light and ultraviolet light sources, computers running the Contour program, and actors wearing the phosphor-based makeup of the Contour systems and methods, used lawfully and operated by Rearden and Rearden-controlled entities to create all authorized videogame CG faces, including those shown in the photographs above. (Mr. Perlman appears at the right in the last photograph):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



3125-1002 / 1706007.1

THIRD AMENDED COMPLAINT

58.     And the following photograph released by Digital Domain shows the stolen Contour apparatus that was operated by the thieves and used unlawfully by Crystal in at least *Rise of the Tomb Raider*. Close inspection of the photo shown in the left inset, shows the thieves neglected to remove a Rearden asset tag on one of the stolen cameras. Rearden Asset #10393 is a Basler 102f Camera, Serial # 20606024, purchased on October 1, 2006 and stolen in 2013 along with the Contour program. Also, numerous tell-tale details specific to Contour's operation are visible in the stolen Contour apparatus photograph (e.g. the right inset shows black tape is wrapped around the end of a fluorescent lamp tube to prevent light spillage from the glowing electrode, a Contour-specific technique taught in Rearden's US Patent 7,567,293 at 19:66-20:15), confirming that the thieves used the identical Rearden system and methods:



3125-1002 / 1706007.1

59.     The Contour system has no "operating manual." It is a hand-built system, the operation of which is known only by Rearden's MOVA team who invented it and Rearden's MOVA employees and contractors who have been trained to use it under strict confidentiality obligations. It was not intended to be an end-user system and must be used carefully with knowledge of its operation for it to function correctly and safely. Defendant was able to use the Contour system only because it had contracted with DD3, which had hired the rogue former Rearden employees who orchestrated the theft to operate Rearden's Contour system without authorization.

**B.      The Contour intellectual property**

60.     The Contour computer program is the subject of United States Copyright Registration No. TXu001977151, a copy of which is attached hereto as Exhibit 1.  Plaintiff Rearden Mova is the owner of Copyright Registration No. TXu001977151.  The Contour program runs on computers that are part of the Contour apparatus.

61.     The Contour methods and systems are the subject of issued United States Patent Nos. 7,605,861 (the "'861 Patent), 8,659,668 (the "'668 Patent"), 7,548,272 (the "'272 Patent"), 7,567,293 (the "'293 Patent"), and 8,207,963 (the "'963 Patent") (copies are attached as Exhibits 2, 3, 4, 5 and 6), as well as numerous United States pending patent applications, and international patents and patent applications.  Plaintiff Rearden Mova is the exclusive owner of the '861, '668, '272, '293, and '963 patents, as well as all other domestic patent applications and all international patents and patent applications drawn to the Contour systems and methods.  The Contour apparatus and methods are embodiments of the claims of the '861, '668, '272, '293 and '963 patents.

62.     The Contour systems and methods include know-how, confidential information that derives independent economic value, both actual and potential, from not being generally known to the public or other persons who can obtain economic value from its disclosure and use.  The Contour confidential information includes, without limitation:

▪   the source code and object code used in operating the Contour physical assets;

- many specific functionally-designed mechanisms, such as determining when part of the face is obstructed from the view of certain cameras and seamlessly filling in those parts of the face with views from other cameras;

- certain of the processes used along with the Contour physical assets, such as the timing configurations for the Contour system;

- sequencing the steps of calibration, aperture adjustment and focus adjustment of the Mova cameras;

- specific phosphor-based makeup formulations;

- techniques for applying makeup to performers being captured;

- specific electrical set up safety measures of the Contour apparatus;

- specific electrical modification of fluorescent light ballasts so as to operate safely;

- specific performer medical considerations, such as, in the case of performers receiving Botox treatments for facial wrinkles, scheduling shoots in specific intervals relative to their treatments to maintain natural skin motion;

- specific instructions to performers on how to perform in such a way to keep their faces within the capture volume;

- specific instructions to performers for specialized moves, such as singing, or bending the head downward and upward, with the face going out of and then back into view of the cameras; and

- information regarding Rearden's and Rearden's controlled entities' prior customer relationships and business terms.

63.     Rearden and Rearden Mova have protected this confidential information by, *inter alia*, maintaining email, documents, source and object code, and other software in secure locations; controlling access to these locations; and by including confidentiality provisions in its agreements with all of its employees and contractors who have ever had access to any source code, object code, other software, electrical set up, proprietary electrical circuit designs, timing systems, interconnects, makeup formulations, phosphor research, results of proprietary tests, etc. The following

3125-1002 / 1706007.1

confidentiality provisions of a Rearden employment agreement (Rearden referenced as "the

Company"), are representative of those in all other Rearden employment and contractor agreements:

- "At all times, both during my employment by the Company and after its termination, I will

  keep in confidence and trust and will not use or disclose any Proprietary Information or

  anything relating to it without the prior written consent of an officer of the Company..."

- "I agree that during my employment by the Company I will not remove any Company

  Documents and Materials from the business premises of the Company or deliver any

  Company Documents and Materials to any person or entity outside the Company, except as I

  am required to do in connection with performing the duties of my employment. I further

  agree that, immediately upon the termination of my employment by me or by the Company

  for any reason ... I will return all Company Documents and Materials, apparatus, equipment

  and other physical property, or any reproduction of such property ..."

64.     The Contour confidential information constitutes trade secrets as that term is defined

in the California Uniform Trade Secrets Act ("CUTSA") at sections 3426 to 3426.11 of the

California Civil Code, and the Defense of Trade Secrets Act at 18 U.S.C. § 1832(b), *et seq*.

65.     The "Contour Assets" at issue herein include the Contour technology, and related

hardware and software, source code, domestic and international patents and patent applications,

domestic and international trademarks, copyrights, trade secrets, domain names, business records,

and various related physical goods (the "Contour Assets").

**C.      Rearden's use of the Contour program, system, methods in fifteen major motion
          pictures and one videogame cinematic trailer, and industry acclaim**

66.     Rearden and/or its controlled affiliates operated the Contour system for, and

authorized use of its system, methods and Contour program output works by Universal Studios in

*The Incredible Hulk* (2008) and *Snow White and the Huntsman* (2012).

67.     Rearden and/or its controlled affiliates operated the Contour system for, and

authorized use of its system, methods and Contour program output works by Sony Pictures in *The

Amazing Spider-Man* (2012).

68.     Rearden and/or its controlled affiliates operated the Contour system for, and authorized use of its system, methods and Contour program output works by Warner Brothers Studios in *Harry Potter and the Deathly Hallows*, Part 1 (2010) and Part 2 (2011), *Green Lantern* (2011), *Jack the Giant Slayer* (2013), and *Gravity* (2013).

69.     Rearden and/or its controlled companies operated the Contour system for, and authorized use of its system, methods and Contour program output works by Disney Motion Pictures Group in *TRON: Legacy* (2010)*, Pirates of the Caribbean: On Stranger Tides* (2011), *John Carter* (2012), and *The Avengers* (2012).

70.     Rearden and/or its controlled affiliates operated the Contour system for, and authorized use of its system, methods and Contour program output works by Twentieth Century Fox in *Percy Jackson and the Olympians: The Lightning Thief* (2010).

71.     Rearden and/or its controlled affiliates operated the Contour system for, and authorized use of its system, methods and Contour program output works by Paramount Pictures for "*The Curious Case of Benjamin Button*" (2008) and *Transformers: Dark of the Moon* (2011).

72.     And Rearden and/or its controlled affiliates operated the Contour system for, and authorized use of its system, methods and Contour program output works by Rocksteady Studios in the videogame cinematic trailer, *Batman: Arkham City* (2011).

73.     In each of the above fifteen films and one videogame trailer, the motion picture and videogame studios performed a routine intellectual property due diligence prior to contracting with Rearden for use of the Contour systems, and methods, in part to verify that Rearden and/or its Rearden-controlled affiliates owned the Contour Assets and technology and had the right to use them for the benefit of the studios.

74.     Rearden and/or Rearden-controlled affiliates have built considerable good will in the Contour Assets and technology.   Rearden and/or Rearden-controlled affiliates used the Contour systems and methods in the fifteen major motion pictures identified above, which collectively grossed roughly $9.5 billion in global box office. Five of these movies are in the top-25 highest-grossing movies since 2008 (when the first Contour movie was released), including the number one

3125-1002 / 1706007.1

highest grossing movie in each of 2011 and 2012[19].  The Contour system and methods and the Contour program have been the subject of numerous motion picture industry press articles in which movie industry luminaries like director David Fincher have lauded the Contour technology:

> "Contour's promise is enormous," Fincher said. "The notion that the human face in all its subtleties could be mapped in real time and with such density of surface information opens up so many possibilities for both two- and three-dimensional image makers and storytellers."[20]

The Contour system and methods and the Contour program have been the subject of an invited presentation by Steve Perlman to the Director's Guild of America[21], and they were identified as a "breakthrough" in the aforementioned TED talk[22].  Contour's improvements over prior facial performance capture technologies have been acclaimed by major motion picture actors, producers, directors, and top VFX professionals, including Ed Ulbrich in his TED Talk description of Contour and how it was essential in the creation of *The Curious Case of Benjamin Button*.[23]  And on February 9, 2015, the Academy of Motion Picture Arts and Sciences awarded the Scientific and Technical Award to the MOVA [Contour] facial performance capture system.[24]

**D.      Transfer of the Contour Assets to OnLive, Inc., OL2, Inc., and Rearden Mova**

75.      Rearden's Contour assets and apparatus (called the "Contour Assets" herein) as well as Rearden's other motion capture assets, along with videogame streaming technology, was spun out of Rearden in 2007 into OnLive, Inc., a corporation controlled by Rearden.  OnLive, Inc. thereafter owned all of the Contour Assets, both Contour and other motion capture technology.

76.      On August 17, 2012, OnLive, Inc. assigned all of its assets, including the Contour Assets, to OL2, Inc. as part of an assignment for the benefit of creditors ("ABC").  On information

---

[19] www.boxofficemojo.com.

[20]Marlowe, July 31, 2006, op. cit.

[21] Directors Guild of America, July 28, 2007, *op. cit.*http://ishindler.com/articles/DGA_Digital_Day_flyer07.pdf

[22] *Op. cit.*

[23] Ulbrich, *Op. cit.*

[24] http://oscar.go.com/news/oscar-news/150209-ampas-sci-tech-awards-2015-winners

1    and belief, OL2, Inc. was primarily focused on the video gaming unit of OnLive, Inc., and was not

2    interested in offering any Contour movie production services.

3          77.    In October of 2012, Rearden learned that OL2, Inc. was interested in selling the

4    Contour Assets and apparatus, and Rearden ultimately decided to reacquire them.  Rearden formed a

5    wholly-owned subsidiary, MO2 LLC, as a vehicle to acquire the Contour Assets from OL2, Inc.

6          78.    Rearden's CEO Perlman tasked his employee Greg LaSalle with management of

7    MO2 LLC. LaSalle had worked with Rearden from 1999 to 2007, and between 2007 and August 17,

8    2012 worked for OnLive, Inc. LaSalle was rehired by Rearden LLC on August 20, 2012.

9          79.    On February 11, 2013, OL2, Inc. transferred the Contour Assets to MO2 LLC through

10   a Membership Interest and Asset Purchase and Sale Agreement.  MO2 LLC is wholly owned by

11   Rearden.

12         80.    On April 19, 2013, MO2 LLC transferred the Contour Assets to another wholly-

13   owned Rearden company, plaintiff Rearden Mova LLC.

14         81.    On September 18, 2014, Rearden recorded patent assignments for the Contour Asset

15   patents, reflecting the assignment from OL2, Inc. to MO2 LLC made in the Membership Interest and

16   Asset Purchase and Sale Agreement.

17         82.    Rearden also recorded patent assignments for the Contour Asset patents, reflecting the

18   assignment from MO2 LLC to Rearden Mova on April 19, 2013. However, the execution dates of

19   the online forms were incorrectly filled in with the recordation dates of September18, 2014 (and in

20   one case, September 8, 2014). As soon as it became aware of the errors, Rearden corrected the

21   erroneous execution dates to the correct date: April 19, 2013.

22   **E.     Shenzhenshi's transparently false ownership claims**

23         83.    Unknown to Rearden, starting in October 2012, rogue Rearden employee LaSalle was

24   in negotiation with a company called Digital Domain 3.0, Inc. ("DD3"), then a People's Republic of

25   China and India-owned Delaware Corporation doing business in Venice Beach, California under

26   "DD3" or "Digital Domain" business names. DD3 is a successor company to prior Digital Domain

27   companies that Rearden, OnLive, Inc., and LaSalle (on behalf of Rearden and OnLive, Inc.) had

28   worked with previously in movie productions making authorized use of the Contour technology

identified above. DD3 is currently wholly-owned by Digital Domain Holdings Ltd. ("DDHL"), a Hong Kong exchange-listed Bermuda corporation with its principal place of business in Hong Kong.

84.     On February 20, 2015, Shenzhenshi Haitiecheng Science and Technology Co., Ltd. ("Shenzhenshi"), allegedly another People's Republic of China corporation with its purported principal place of business in Shenzhen, China, filed a declaratory judgment action against Rearden and various other Rearden entities in this judicial district, Case No. 3:15-cv-00797-JST, alleging that it had acquired the Contour Assets by assignment from MO2 LLC on May 8, 2013. Shenzhenshi further alleged that it had granted an exclusive license to the Contour Assets to DD3.

85.     But as set forth above, MO2 LLC did not own the Contour Assets on May 8, 2013, so it could not have assigned them to Shenzhenshi on that date. Rather, MO2 LLC had previously assigned the Contour Assets to Rearden Mova LLC on April 19, 2013. Further, on May 8, 2013 LaSalle was not a Rearden employee, and as an employee or not, LaSalle never had authority to sell the MO2 LLC Assets to anyone. Nor could Shenzhenshi have granted a license of the Contour Assets to Digital Domain because it never owned the Contour Assets. Shenzhenshi, DD3 and LaSalle knew that the MO2-Shenzhenshi transaction was a ruse. LaSalle wrote to his attorneys, "[DD3] are going to actually acquire the Contour Assets through one of their Chinese companies [Shenzhenshi]. I believe this is so it would be nearly impossible for Steve [Perlman] to go after them….They will indemnify me against any claims brought by Rearden and Steve Perlman." [25]

86.     The day after the Court granted Rearden permission to file counterclaims, a company called Virtue Global Holdings, Ltd., a British Virgin Islands corporation, suddenly appeared in the Shenzhenshi case represented by Shenzhenshi's counsel. Shenzhenshi absconded from the litigation. Months later Virtue Global Holdings alleged that Shenzhenshi had assigned the Contour Assets to Virtue Global Holdings on December 17, 2015. But again, as set forth above, Shenzhenshi never owned the Contour Assets and therefore could not have assigned them to Virtue Global Holdings.

---

[25] *Shenzhenshi, et al. v. Rearden, et al.,* NDCA Case No. 15-797, HEYL001594.

87.     Rearden asserted counterclaims for declaratory relief against Shenzhenshi and Virtue Global Holdings affirming Rearden's ownership of the Contour Assets, and for patent, trademark, and copyright infringement, misappropriation of trade secrets, fraudulent transfer, and other causes of action, against Shenzhenshi and Virtue Global Holdings.

88.     The Contour Asset ownership and fraudulent transfer claims were bifurcated and tried in December, 2016.  On August 11, 2017, the Court entered a statement of decision in Rearden's favor.  It found that Rearden had at all material times been the owner of the Contour Assets, apparatus and program.

**F.     Defendant's unauthorized use of the Contour Assets**

89.     Once LaSalle was hired by DD3 in or about May, 2013, DD3 took possession of the patented Contour Assets for Shenzhenshi. On information and belief, LaSalle had access to the secure storage facility where the Contour Assets were kept, and assisted DD3 in taking unauthorized possession of the patented Contour apparatus and copies of the copyrighted Contour program.

90.     Thereafter, DD3 began secretly offering Contour facial performance capture services and Contour program output works to motion picture studios and production companies, including Defendant.  The system used by DD3 is the *system* developed and constructed by Rearden and stolen by DD3 from the secure storage facility, which includes commercial embodiments of the system claims in the Contour patents.  And statements by Camilla Luddington, the star in *Rise of the Tomb Raider*[26] and associated tweeted images (shown below) confirm that DD3 performed the *methods* that are the commercial embodiments of the method claims of the Contour patents.

91.     Despite the fact that Defendant Crystal had previously attended videogame industry conferences where Rearden-controlled companies were promoting the use of Mova Contour for creating photorealistic CG faces for videogames, that Crystal used Rearden-developed technology within is videogames (including prior *Tomb Raider*-franchise games developed by Crystal) as a Rearden-controlled company business partner, and despite the fact that Crystal used Contour technology while Rearden was in the well-publicized *Shenzhenshi* litigation regarding Contour's

---

[26] Graham, Jefferson, op. cit.

ownership, Crystal nonetheless secretly contracted for use of the Contour system, methods, and Contour program and output in at least *Rise of the Tomb Raider*, without ever contacting Rearden or Mr. Perlman to confirm that it was authorized to do so.

92.     *Rise of the Tomb Raider* was produced by Crystal, and reproduced and distributed for performance and display by Square Enix, on Xbox 360, Xbox One and Playstation 4 videogame consoles and Windows PCs in the United States.

93.     On information and belief, between February 2013 and October 11, 2016, Crystal contracted with DD3 to provide facial performance capture services and output works made with the patented Contour system and methods and the copyrighted Contour program, including at least the performance of Camilla Luddington for the CG face of the Lara Croft character in *Rise of the Tomb Raider*.

94.     Defendant Crystal knew or should have known that the copyrighted Contour program and output were owned by Rearden and/or other Rearden-controlled companies because:

- Crystal was an attendee at industry videogame conferences where Rearden-controlled companies promoted Contour's use in creating photorealistic CG faces for videogames.

- Crystal was a business partner of a Rearden-controlled company, utilizing Rearden-developed technology in their videogames (including prior *Tomb Raider*-franchise games developed by Crystal).

- Crystal had performed an intellectual property due diligence to confirm that Rearden and its controlled companies owned the Rearden-developed videogame technology that Crystal used in its videogames. Crystal conducted, or should have conducted, due diligence to verify that DD3 was authorized to offer the Contour facial performance capture services and Contour program output works used in *Rise of the Tomb Raider*.

- Crystal, through its employees and agents, reviewed color and grayscale Contour output works that were consistently and extensively marked with Rearden's copyright notice.

95.     Neither Rearden nor Rearden Mova were aware of—let alone authorized use of—the copyrighted Contour program and output by DD3 or Crystal in *Rise of the Tomb Raider*.  Nor did Rearden or Rearden Mova authorize any reproduction, distribution, performance, or display of the

copyrighted Contour program's output or the creation, reproduction, distribution, performance, or display of the of derivative works based upon Contour program output by DD3 or Crystal in *Rise of the Tomb Raider*. At no time did DD3 or defendant Crystal negotiate or come to agreement on financial terms in which Rearden would authorize Contour facial performance capture services and Contour program output works to be used in *Rise of the Tomb Raider*.

96.     Brian Horton, Crystal's *Rise of the Tomb Raider* Game Director underscored the significance of Contour technology to the game's success:

> "Because Tomb Raider is all about Lara [Croft] and her journey we always want to make her feel as human and believable as possible."[27]

97.     Actress Camilla Luddington, who provided the facial performance for Lara Croft, the lead character in *Rise of the Tomb Raider,* described the Contour systems and methods of the system as she contrasted its precision with that of conventional facial capture technology she had used in the prior Tomb Raider franchise game in 2013:

> "In the previous [2013 Tomb Raider] game we were using the dots on your face which is about 90 points of reference. With MOVA it's a fluorescent paint that gets airbrushed onto your face. It takes about 45 minutes. You can't see it under natural light, but if you go under black light you are able to see it. And, it's around 7,000 points of reference. So, it's a much more realistic and the capture is just unbelievable, and you'll see a lot more of that in the second game [*Rise of the Tomb Raider*].[28]

Added Kam Yu, Crystal's Lead Character Animator emphasized the significant contribution of Contour technology:

> "We're able to capture the nuances of facial movement, and she [Lara Croft] really comes to life."[29]

Videogame technology review site Eurogamer.net praised the resulting quality of the Contour-derivative CG faces in *Rise of the Tomb Raider* (emphasis added):

> "The cut-scene sequences present in Rise of the Tomb Raider offer some of the most impressive visuals in the game. The mix of natural motion, high quality post effects, and realistic materials really helps sell these sequences. **Actors and actresses were captured using the Mova performance capture system which uses a paint system**

---

[27] "Building Lara's Model", op. cit.

[28] Graham, Jefferson, op. cit.

[29] "Building Lara's Model", op. cit.

**rather than the traditional pasted white balls to track expressions.**
This data is then fed into the engine which makes use of blendshapes
rather than the traditional bone structures. Blendshapes work by
breaking up key expressions into individual shapes which can be
animated in various combinations enabling a very natural performance.
**The results are mighty impressive and created some of the most
nuances cinematic sequences we've seen to date."[30]**

98.     Ms. Luddington tweeted high-resolution photographs of herself with Contour's

phosphor-based makeup applied in a random pattern as it appears illuminated by black light during a

Contour facial capture session. Along with the photographs she tweeted (hashtagging both "Tomb

Raider" and "MOVA" registered trademarks), "#tombraider fans.This is #mova.Florescent [sic] paint

that is sprayed all over my face 2give 7000 points of ref!!!"[31]

---

[30] Linneman, John, op. cit.

[31] https://twitter.com/camilluddington/status/497430078288953344

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



46

Case No. 4:17-cv-04187-JST

3125-1002 / 1706007.1

Ms. Luddington continued tweeting and responded to a follower:[32]



99.    Ms. Luddington also posted a photograph of herself being prepared for a Contour capture session with an airbrush spraying on the phosphor-based makeup, as taught in Rearden Mova US Patent 8,659,668 (10:22-23):

---

[32] https://twitter.com/camilluddington/status/497430535782678528

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28

100.    Contour systems and methods and Contour program output works files enabled an extraordinary level of facial realism never before achieved in a videogame. Exemplary still images of Contour program output works-derivative Lara Croft CG faces from *Rise of the Tomb Raider* are shown below [33].

---

[33] "Building Lara's Model", op. cit.

1





Case No. 4:17-cv-04187-JST

THIRD AMENDED COMPLAINT

3125-1002 / 1706007.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





101.    Ms. Luddington's reports that her facial performance as Lara Croft for *Rise of the Tomb Raider* had been captured using the Contour program, system, and methods were confirmed by both Crystal and Square Enix.  Use of Contour technology in *Rise of the Tomb Raider* was widely reported in the on-line videogame press, including giantrealm.com, playstationlifestyle.net, videogamer.com, stuff.co.nz, gamespot.com, and playertheory.com. In late February 2015, Ms. Luddington gave an interview to gameinformer.com just nine months before *Rise of the Tomb Raider* was launched, maintaining that Contour technology was used for facial motion capture in the gameplay. And DD3 confirmed in a July 29, 2015 post on its Facebook page that Contour technology was used in *Rise of the Tomb Raider* less than just four months before the game was launched).

102.    In connection with the game's launch, Ms. Luddington appeared as Defendant's representative at numerous major videogame conferences to promote *Rise of the Tomb Raider*, in which she continued to affirm that Contour technology was used in the game itself.[34]

103.    Crystal Dynamics's Tomb Raider Game Director Brian Horton and Creative Director Noah Hughes both appeared at numerous major videogame conferences and confirmed Ms. Luddington's reports that Defendant used Contour technology in the gameplay itself.[35]

104.    And Defendant's use of Contour technology in *Rise of the Tomb Raider* gameplay was further confirmed by an independent technical reviewer,[36] whose in-depth technical analysis was based on interviews with Crystal Dynamics' technical staff, who subsequently reviewed the analysis and identified a misstated technical detail about *Rise of the Tomb Raider* computer graphics technology. The reviewer corrected the misstatement, citing that Crystal Dynamics advised him of

---

[34] *See, e.g.*, https://www.youtube.com/watch?v=lwZOUzuv63k  (0-1:17); https://youtu.be/iPj_5xlQVk4  (0-1:03); https://youtu.be/QmjrpagZa_8?t=6m21s (6:21-8:04); https://youtu.be/lPkU-kTIMnk?t=9m51s  (9:51-11:21).

[35] *See, e.g.*, https://youtu.be/EPdV9vQ9bMk, https://youtu.be/pWTphH_-bAU?t=1m40s  (at 1:40); https://youtu.be/y5EuaJ5q_AU?t=2m57s  (at 2:57).

[36] *See,* https://youtu.be/vin4nKggsx4?t=4m52s  (at 4:52-6:02), e.g. "…employing a newer technique called 'Mova'".

the correction[37]. After the correction was made, Crystal Dynamics' Brian Horton tweeted an endorsement of the technical analysis, affirming the correction[38]. If this reviewer's in-depth technical analysis of the use of Contour in *Rise of the Tomb Raider* were inaccurate, clearly Crystal Dynamics' technology staff would have corrected the error along with their correction of the other misstated technical detail about *Rise of the Tomb Raider* computer graphics technology. But Crystal Dynamics did not. Quite the opposite, upon reviewing and making corrections to another computer graphics inaccuracy in the in-depth technical analysis, Crystal Dynamics' technical staff publicly endorsed the in-depth technical analysis as accurate.

105.    At no time has Defendant publically retracted any of these reports by its employees, agents and representatives that Defendant used the Contour program, system, and methods in *Rise of the Tomb Raider* gameplay.

106.    Defendant Crystal released *Rise of the Tomb Raider* in the United States on Xbox 360 and Xbox One on November 10, 2015, on Microsoft Windows on January 28, 2016 and on Playstation 4 on October 11, 2016. Millions of copies have been sold in the United States across all platforms in all of its versions, including Xbox 360, Xbox One, PlayStation 4 and Windows versions.

**FIRST CAUSE OF ACTION:**
**VICARIOUS COPYRIGHT INFRINGEMENT**

107.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if they were fully set forth here.

***Rearden's Copyright in the Contour Program.***

108.    The Contour program is an original literary work of authorship by Rearden-employed programmers.

---

[37] https://youtu.be/vin4nKggsx4?t=45s  At 00:45 the reviewer displays the message, "I made a mistake in the video with an assumption from [Crystal Dynamics] Dev interview on Resolution. This was incorrect and the game is confirmed 1080p by [Crystal Dynamics] Developers and I have amended accordingly. I apologize for my error…
https://twitter.com/BrianHortonArt/status/622621327451537408  Sorry for the confusion."

[38] "Nice analysis from NC Gamer, Rise of the Tomb Raider footage he previewed is 1080p from an Xbox1 https://www.youtube.com/watch?v=vin4nKggsx4&sns=tw"
https://twitter.com/BrianHortonArt/status/622621327451537408, tweeted July 18, 2015, 9:17 PM.

109.    The Contour program was fixed in a tangible medium of expression when it was stored in non-volatile computer memory and/or media such as computer hard drives, CD, CD-R, DVD, or Blu-ray disks from which it may be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.  Accordingly, the Contour program is a proper subject of copyright protection.

110.    Rearden's programmers duly assigned their copyights in the Contour program to Rearden.  At all material times, Plaintiff Rearden Mova was and is the owner of United States Copyright Registration No. TXu001977151 for the Contour program.

### *DD3's Direct Infringement of Rearden's Copyright.*

111.    Each time that DD3 operated the Contour apparatus, whether for facial performance capture or for processing captures into output works, the computers made an unauthorized copy of the Contour program in their central processing unit's ("CPU") random access memory ("RAM"). Each such copy is a violation of Rearden's exclusive right to authorize copies of its Contour program under 17 U.S.C. § 106 (1), and therefore each copy is an act of direct copyright infringement by DD3.

### *Defendant's Vicarious Liability for DD3's Infringement*

112.    Defendant, either directly or through entities subject to its direction and control, contracted with DD3 for facial performance capture services and output works using the Contour program for the *Rise of the Tomb Raider* videogame and its promotional materials (not including the trailer released for the 2014 Electronic Entertainment Expo ("E3") on or around June 9, 2014, or any promotional materials related to that trailer).  At all material times during DD3's performance of the facial performance capture contract with Defendant, Defendant was in a position to police DD3 and/or had the right and ability to supervise and control DD3's performance.

113.    Defendant, either directly or through entities subject to its direction and control, initiated and scheduled each facial performance capture session with DD3 using the Contour program.

3125-1002 / 1706007.1

114.     For each session, Defendant, either directly or through entities subject to its direction and control, supplied performers to provide facial performances for capture by DD3 using the Contour program.

115.     For each session, Defendant, either directly or through entities subject to its direction and control, supplied a director to control and direct the actions of DD3 in providing facial performance capture using the Contour program.  Acting as Defendant's supervising agent, the director controlled and directed DD3's use of the Contour program by starting and terminating each session, starting and stopping each take, ordering DD3 to provide additional takes, and choosing "Selects" (the Contour capture takes which were deemed "good takes" by the director) for further Contour program processing to create Captured Surface and Tracking Mesh output works.  So extensive is Defendant's directors' supervision and control over the facial motion capture sessions performed by DD3 using the Contour program, that Defendant contends that the directors' contribution "is substantial and performs 'the lion's share of the creativity' in the facial motion capture," and that consequently the directors are the authors of the results of the facial motion capture. [39]

116.     For each session, Defendant, either directly or through entities subject to its direction and control, provided various film crew to support and facilitate DD3's facial performance capture using the Contour program.  Defendant relied on the presence of a clapperboard operated by film crew in images in the original complaint to show that the facial performance sessions were superintended and directed by persons provided by Crystal Dynamics, either directly or through entities subject to its direction and control. [40]

117.     Defendant, either directly or through entities subject to its direction and control, received from DD3 and reviewed numerous Contour program output works bearing the Rearden Contour copyright notice.

---

[39] *See, e.g.,* Dkt. 36 at 8:16-18; 6:13-16.

[40] *Id.* at 8:4-15.

3125-1002 / 1706007.1

118.    After reviewing the Contour program output works from Contour capture takes, Defendant, either directly or through entities subject to its direction and control, chose specific Contour program output works and designated them as "Selects," and caused DD3 to use the Contour program to further process the Selects to create new output works that were used to animate CG characters in *Rise of the Tomb Raider,* including at least the lead character Lara Croft.

119.    On information and belief, the contract between DD3 and Defendant, either directly or through entities subject to their direction and control, grants the unrestricted right to cancel "any portion of the Services" provided by DD3, subject only to the duty to pay for costs and services performed before cancellation.  Accordingly, Defendant, either directly or through entities subject to its direction and control, was in a position to police DD3's infringing acts.  It had the authority and practical ability to observe and evaluate services provided by DD3 and—if Defendant deemed those services inadequate, improper, or unlawful—require DD3 to remedy the services or cancel DD3's provision of services.

120.    Defendant had an obvious and direct financial interest in exploitation of Rearden's copyright in the Contour program to use the Contour output works to animate the CG Lara Croft character in *Rise of the Tomb Raider.*  Defendant believed that Contour facial performance motion capture would make the CG Lara Croft character more believable and compelling, which would in turn draw a wider audience to the game.

121.    Accordingly, Defendant induced each of DD3's direct infringements of Rearden's copyright in the Contour program during the *Rise of the Tomb Raider* facial performance capture contracts, and are vicariously liable to Rearden for each of DD3's direct infringements.

122.    The acts of vicarious copyright infringement by Defendant were, and are, willful, intentional, purposeful, and knowing, in that Defendant at all material times had actual knowledge that the copyright in the Contour program has been, and is, owned by Rearden, or was in reckless disregard of or willfully blind to Rearden's copyright, and has acted in knowing disregard of and indifference to Rearden's rights.

123.    Rearden has been harmed as the direct and proximate result of the foregoing acts of copyright infringement.  Plaintiffs are entitled to actual damages, profits of the infringers, and all such other remedies as may be available under the Copyright Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief:

**A.      Monetary Damages.**

Pursuant to 17 U.S.C. § 504, award Plaintiffs (a) actual damages; and (b) any additional profits of Crystal that are attributable to the copyright infringements alleged herein and are not taken into account in computing the actual damages.

**B.      Costs and Attorney's Fees.**

Pursuant to 17 U.S.C. § 505, award full costs and a reasonable attorney's fee to Plaintiffs.

**C.      Other and Further Relief.**

Grant such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands trial by jury of all issues so triable under the law.

Dated:  February 23, 2021                          Respectfully submitted,

                                                    **ZUBER LAWLER & DEL DUCA LLP**
                                                    JOSHUA M. MASUR


                                        By:   _____
                                                    Attorneys for Plaintiffs
                                                    REARDEN LLC AND REARDEN MOVA LLC