1   JOSHUA M. MASUR  (SBN 203510)
        *jmasur@zuberlawler.com*
2   **ZUBER LAWLER LLP**
    2000 Broadway Street
3   Redwood City, California 94063
    Telephone: (650) 866-5901
4   Facsimile: (213) 596-5621

5   Attorneys for Plaintiffs
    Rearden LLC and Rearden Mova LLC

6

7

8                  **UNITED STATES DISTRICT COURT**

9        **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

10

11  REARDEN LLC and REARDEN MOVA          Case No. 4:17-cv-4187-JST
    LLC, California limited liability companies,
12                                        **PLAINTIFFS' OPPOSITION TO**
                      Plaintiffs,         **DEFENDANT CRYSTAL DYNAMICS'**
13                                        **MOTION FOR ATTORNEYS' FEES**
            v.
14                                        *Filed concurrently with Declaration of*
    CRYSTAL DYNAMICS, INC., a California  *Stephen G. Perlman*
15  corporation; and DOES 1 through 100,
    inclusive,                            Judge:    Hon. Jon S. Tigar
16                                        Date:     June 20, 2024
                      Defendants.         Time:     2:00 p.m.
17                                        Crtrm.:   6, 2d Floor

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................2

    A.    The Original MOVA Theft and SHST Litigation (2013-present)......................2

    B.    Procedural History of This Litigation ..............................................................4

    C.    Crystal-Rearden Settlement Efforts and Dismissal (2017-2024) ....................6

III.  LEGAL STANDARDS ..............................................................................................7

    A.    Prevailing Party ...............................................................................................7

    B.    Whether Fees Should Be Shifted .....................................................................7

    C.    Whether Fees Sought Are Reasonable .............................................................8

IV.   ARGUMENT .............................................................................................................8

    A.    The Court Should Not Shift Crystal's Attorneys' Fees to Rearden ..........................8

        1.    Rearden's Voluntary Dismissal Provides a Low Degree of Success ............9

        2.    Rearden's Copyright Claims Were Well Founded in Fact and Law, Not "Frivolous" ........................................................................................11

        3.    Rearden's Litigation Conduct Was Reasonable ..........................................16

        4.    Rearden Brought This Lawsuit in Good Faith with Proper Motivation ...............................................................................................19

        5.    Deterrence Factors Weigh Against Fee-shifting .........................................21

    B.    Even If Fee Shifting Were Appropriate, Crystal's Request Should Be Denied ...........................................................................................................21

        1.    Even If Fee-shifting Were Appropriate, It Should Be Limited to the Period After the Court Determined that the Claims Became "Objectively Unreasonable".......................................................................22

        2.    Crystal's Failure to Submit Detailed Invoices Is Fatal to Its Fee Request .....................................................................................................23

        3.    Crystal Expressly Stipulated that It Cannot Recover on the Patent Claims .......................................................................................................24

V.    CONCLUSION ........................................................................................................25

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

1

# <u>TABLE OF AUTHORITIES</u>

2

3

<u>Page</u>

4

5

<u>Cases</u>

6
*A.D. v. California Highway Patrol*,
    712 F.3d 446 (9th Cir. 2013) .......................................................................... 16

7
*Atari Interactive, Inc. v. Redbubble, Inc.*,
    No. 18-cv-3451-JST (N.D. Calif., Sept. 12, 2022) ............................... passim

8

9
*Bridgeport Music, Inc. v. London Music, U.K.*,
    345 F.Supp.3d 836 (M.D. Tenn. 2004) ....................................................... 9, 10

10
*Choyce v. SF Bay Area Independent Media Center*,
    No. 13-cv-1842-JST, 2014 WL 5597274
11
    (N.D. Cal. Nov. 3, 2014) .................................................................................. 10

12
*DuckHole Inc. v. NBCUniversal Media LLC*,
    No. 12-cv-10077, 2013 WL 5797204
13
    (C.D. Cal. Oct. 25, 2013) ................................................................................... 9

14
*Epikhin v. Game Insight North America*,
    No. 14-cv-4383-LHK, 2016 WL 1258690
15
    (N.D. Cal. Mar. 31, 2016) ................................................................... 15, 16, 21

16
*Ets-Hokin v. Skyy Spirits*,
    323 F.3d 763 (9th Cir. 2003) .............................................................................. 8
17

18
*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996) .............................................................................. 10

19
*Goldberg v. Cameron*,
    No. 05-cv-3534-RMW, 2011 WL 3515899
20
    (N.D. Cal. Aug. 11, 2011) ................................................................................ 20

21
*Good Job Games Bilism Yazilim Ve*
        *Pazarlama A. v. SayGames LLC*,
22
    No. 19-cv-7916-EMC (N.D. Calif., May 4, 2023) ............................................. 7

23
*Keith Mfg., Co. v. Butterfield*,
    256 F.Supp.3d 1123 (D.Or. 2017),
24
    *rev'd on other grounds*, 955 F.3d 936 (Fed. Cir. 2020) .............................. 11, 25

25
*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) ........................................................................................... 7
26

27
*Lexington Luminance LLC v. Feit Electric Co., Inc.*,
    No. 18-cv-10513, 2020 WL 7425320
    (C.D. Cal. Oct. 20, 2020) ................................................................................. 23
28

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
No. 12-cv-4601-EMC, 2014 WL 1724478
(N.D. Cal. Apr. 29, 2014) ........................................................................ 21

*Nutrivita Laboratories, Inc. v. VBS Distribution Inc.*,
160 F.Supp.3d 1184 (C.D. Cal. 2016) ................................................... 9, 10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
No. 16-cv-1393-JST (N.D. Calif., Nov. 12, 2019) ................................. passim

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
2005 WL 2007932 (N.D. Cal. Aug. 12, 2005) ........................................... 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
695 F.3d 946 (9th Cir. 2012)
*rev'd on other grounds* 572 U.S. 663 (2014) ............................................. 9

*Pop Top Corp. v. Rakuten Kobo Inc.*,
No. 20-cv-4482-DMR, 2022 WL 901547
(N.D. Cal. Mar. 28, 2022) ........................................................................ 24

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
No. 19-cv-6359, 2020 WL 7889048
(C.D. Cal. Nov. 23, 2020) ................................................................. 11, 25

*Rearden, et al. v. Disney, et al.*,
4:17-cv-04006-JST (N.D. Cal.) .............................................................. 3, 5

*RFR Industries, Inc. v. Century Steps, Inc.*,
477 F.3d 1348 (Fed. Cir. 2007) .......................................................... 11, 25

*Shame On You Prods., Inc. v. Banks*,
893 F.3d 661 (9th Cir. 2018) ................................................................. 8, 9

*Shenzhenshi Haitecheng Science & Technology Co., Ltd. v.*
*Rearden LLC, et al.*,
No. 3:15-cv-797-JST (Feb. 20, 2015) ........................................................ 3

*Thompkins v. Lil' Joe Records, Inc.*,
No. 02-61161-CIV, 2008 WL 896898
(S.D. Fla. Mar. 31, 2008) ........................................................................ 21

*Traditional Cat Ass'n, Inc. v. Gilbreath*,
340 F.3d 829 (9th Cir. 2003) ..................................................................... 8

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985) ................................................................... 8

*VMG Salsoul, LLC v. Ciccone*,
824 F.3d 871 (9th Cir. 2016) ................................................................... 15

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dept.*,
447 F.3d 769 (9th Cir. 2006) ..................................................................... 9

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

*Wolf v. Travolta*,
     No. 2:14-cv-938, 2016 WL 1676427
     (C.D. Cal. Apr. 25, 2016) .................................................................................................. 10

**<u>Statutes</u>**

17 U.S.C. § 505 ................................................................................................................ 7, 8

**<u>Rules</u>**

Fed. R. Civ. P. 41(a)(1)(A)(ii) ...................................................................................... 11, 24, 25

USDC NDCA Local Rule 54-5(b)(2) ............................................................................... 23

3125-1002 / 2431699.16

I.       **<u>INTRODUCTION</u>**

A rogue employee of Plaintiff Rearden LLC (with Plaintiff Rearden Mova LLC, "Rearden") conspired with Digital Domain 3.0 ("DD3") and others to steal Rearden's MOVA Contour facial capture technology and assets.  DD3 used the stolen assets to perform visual effects work for motion picture studios and other customers.

Rearden filed cases, including this lawsuit, against certain of DD3's customers asserting that the use of the stolen assets and technology infringed Rearden's copyright and patent rights. This case, in particular, relied on public statements of individuals involved in the development of the *Rise of the Tomb Raider* video game ("ROTTR"). As set forth in detail in Rearden's previous pleadings and summarized below, Defendant Crystal Dynamics, Inc. ("Crystal") made extensive and repeated public statements that MOVA was used in ROTTR to achieve unprecedented realism in facial animation – statements that, to this day, remain publicly available and have not been retracted.

This Court found that the evidence that Rearden uncovered was sufficient to defeat summary judgment and reach a jury. Crystal filed motions for summary judgment that were partially granted and partially denied, but never served a Rule 11 motion or, prior to filing its motion for attorneys' fees, asked the Court to determine that Rearden's claims were frivolous. As the close of fact discovery approached, Rearden determined that while it could proceed to trial, and fully expected to win on liability, the potential risk-discounted damages would exceed the cost of litigation through trial and expected appeal. After settlement negotiations foundered because the parties "reached an impasse on one material term" (Dkt. 316 at 1:25), and after a subsequent settlement conference *requested by Crystal* failed to resolve the impasse, Rearden voluntarily dismissed the lawsuit.

Under the factors this Court applies in determining whether to award attorneys' fees in copyright infringement lawsuits, an award of fees would be wholly inappropriate here. Plaintiffs are not required to abandon lawsuits merely because a defendant, like almost all defendants, swears innocence, even under oath. Nor are Plaintiffs who determine that the cost of further litigation outweighs the benefit required to litigate claims to trial to preclude a fee award.

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

1    Rearden's conduct in this case has been reasonable, attempting to enforce its intellectual

2    property rights against a party it reasonably believed (and still believes) to have infringed those

3    rights, and then voluntarily dismissing its claims for business reasons (not because Rearden

4    believed its claims lacked merit). Rearden "filed suit because it was faced with evidence of

5    widespread, unauthorized copying of its copyright-protected software, including some degree of

6    participation by [Crystal].… Faced with these facts, any company in [Rearden]'s position would

7    have vigorously litigated a copyright infringement case against [Crystal]." *Oracle Am., Inc. v.*

8    *Hewlett Packard Enter. Co.*, No. 16-cv-1393-JST, slip op. at 3-4 (N.D. Calif., Nov. 12, 2019). The

9    fact that Crystal repeatedly engaged in – indeed, requested that the Court order the parties to

10   engage in – settlement negotiations undermines its claim that it was the target of a frivolous or

11   meritless lawsuit brought for an improper purpose.

12   The Court should accordingly deny Crystal's motion for attorneys' fees.

13   **II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY**

14   **A.      The Original MOVA Theft and SHST Litigation (2013-present)**

15   The present case stems from a 2013 theft of Mova Assets (facial capture software,

16   hardware and trade secrets) from Plaintiff Rearden LLC ("Rearden"). Rearden is a technology

17   incubator founded 25 years ago by Steve Perlman that focuses on long-term, high-risk

18   development of fundamental technologies which, if successful, are sold to large companies or

19   spun-out as new venture-backed businesses. Rearden has about 10 employees, almost all scientists

20   and engineers. While a purely practicing entity, Rearden relies upon the enforceability of its

21   intellectual property, including its copyright in billions of lines of source code as well as over 700

22   patents covering its inventions. In 25 years of operation, Rearden has never brought a lawsuit for

23   infringement of its copyrights or patents, except in relation to the stolen MOVA Assets.

24   In early 2013, a rogue Rearden employee stole the MOVA Assets and, unbeknownst to

25   Rearden, sold them to Shenzhenshi Haitecheng Science & Technology Co., Ltd. ("SHST"), which

26   then exclusively licensed them to DD3. DD3 secretly began offering MOVA services to Rearden's

27

28

1  former business partners and customers, including Crystal,[1] for a steep discount or free[2]. Rearden

2  did not become aware of this until late 2014, then in early 2015, SHST sued Rearden, seeking a

3  declaratory judgment that SHST owned the MOVA Assets. Rearden filed counterclaims in 2016,

4  and SHST absconded from the case. *Shenzhenshi Haitecheng Science & Technology Co., Ltd. v.*

5  *Rearden LLC, et al.*, No. 3:15-cv-797-JST, Dkt. 1 (Feb. 20, 2015) (the "SHST Litigation"). In

6  June 2016, the Court issued a Preliminary Injunction order enjoining DD3 and its customers from

7  using the MOVA Assets and requiring DD3 to place the MOVA Assets in escrow. SHST

8  Litigation, Dkt. 188 (June 17, 2016). DD3 subsidiary VGH intervened, and a bench trial was held

9  in December 2016. SHST Litigation, Dkt. 373 (Dec. 5, 2016). In August 2017, the Court's Final

10 Decision found that "SHST, DD3, and VGH knew that LaSalle did not own the Mova Assets, and

11 did not have actual or apparent authority to sell the Mova Assets. Neither SHST nor DD3 nor

12 VGH took the Mova Assets in good faith." and "VGH does not own the Mova Assets because

13 Rearden owns them." SHST Litigation, Dkt. 427 at 15:7-9, 18:10 (Aug. 11, 2017). The Court

14 ordered that the assets be returned to Rearden "forthwith." *Id.* at 18:11-12.

15      DD3 refused to return the MOVA Assets, and in 2019 the Court assigned a Special Master

16 to oversee the return process, who retained forensic expert firm, DisputeSoft. DisputeSoft

17 collected millions of copies of MOVA Assets from DD3, including files evidencing use of MOVA

18 Assets in the ROTTR game. In 2022 Crystal sent a letter to the Special Master seeking protection

19 for MOVA Assets that included its copyrighted works. Declaration of Stephen G. Perlman in

20 Opposition to Defendant Crystal Dynamics' Motion for Attorneys' Fees ("Perlman Decl."), Ex. A.

21 In 2023, the Court ordered DisputeSoft to produce Crystal copyrighted works as Confidential

22 discovery, and DisputeSoft commenced that process. Dkt. 306, 309.

23      Rearden has continually attempted to resolve the matter with DD3, informally in 2013 and

24 2014, and in several mediations throughout the pendency of the SHST litigation from 2015 to

25 summer 2017. A DD3 settlement was desirable because it would have mooted further litigation,

26

27 [1] Crystal is a former customer of OnLive, Inc., controlled at the time by Rearden.

28 [2] *Rearden, et al. v. Disney, et al.*, 4:17-cv-04006-JST (N.D. Cal.) ("Disney Case"), Trial Tr. at 824. DD3 30(b)(6) witness Gayle Munro's testimony is at Dkt. 684-1 p. 122

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

1    but the ongoing unsuccessful DD3 settlement discussions delayed MOVA copyright infringements

2    to the brink of the 3-year statute of limitations.

3        **B.        Procedural History of This Litigation**

4        In July 2017, Rearden filed complaints against four defendants, including a copyright and

5    patent infringement complaint against Crystal and Square Enix, Inc. ("Square Enix") on July 24,

6    2017, just two weeks before the 3-year statute of limitations for the first known disclosure of

7    MOVA's use in ROTTR[3]. DD3 publicly stated it had indemnified the defendants and that DD3

8    itself was indemnified by insurance[4].

9        On September 15, 2017, Crystal filed a Motion to Dismiss ("MTD 1"). Dkt. 20. On

10   March 6, 2018, the Court granted MTD 1 for direct copyright and patent infringement claims

11   without prejudice, and denied MTD 1 for induced patent claims. Dkt. 48. The same day Rearden

12   filed an amended complaint that added vicarious and contributory copyright infringement. Dkt. 49.

13       On April 5, 2018, Crystal filed a Motion for Summary Judgment ("MSJ 1") and, jointly

14   with defendants in the three other MOVA cases, another Motion to Dismiss ("MTD 2"). Dkt. 65.

15   On June 8, 2018, the Court granted MTD 2 for direct patent infringement with prejudice, but

16

17   _____

18   [3] August 7, 2014 Camilla Luddington tweet: "#tombraider fans. This is #mova.Florescent [sic]
     paint that is sprayed all over my face to 2give 7000 points of ref!!! … it should be noted that

19   normal mocap "dots" marked on a face are only 90 points ref... This means a MUCH more
     realistic capture." Instagram: "#mova being applied #tombraider #laracroft #bonuspicforIG".

20   [4] DD3 parent Digital Domain Holding, Ltd. ("DDHL") repeatedly stated its indemnification

21   obligations in its annual and mid-year reports, further stating it believed its indemnification was
     covered by insurance. "During 2017, [Rearden] filed four separate lawsuits against certain clients

22   of [DD3] relating to the use of the [MOVA] for certain visual effects projects that [DD3] had
     completed ('Other Lawsuits')… In its production services agreements for the projects that are the

23   subject of the Other Lawsuits, [DD3] agreed to certain indemnification obligations with respect to
     claims brought against these clients arising from allegations that the technology it used was not

24   properly licensed or acquired. As a result, these clients have requested that [DD3] acknowledge its
     obligation to indemnify them for any losses suffered as a result of their involvement in the Other

25   Lawsuits. [DD3] has submitted these indemnity requests to one of its insurance companies that

26   may provide insurance coverage for indemnity claims brought against it." 2021 DDHL Annual
     Report, p. 14 (available at https://hk.digitaldomain.com/wp-

27   content/uploads/2022/04/e0547_220422_AR.pdf). DD3 discovery also confirmed its
     indemnification obligations. Further, DD3 and its insurer participated in some defendant

28   settlement discussions as indemnitor.

1    denied MTD 2 for vicarious and contributory copyright infringement. Dkt. 82. Also on that day,

2    the Court denied MSJ 2.

3         On June 27, 2018, Crystal, Square Enix and Rearden stipulated to voluntary dismissal of

4    patent claims ("Patent Dismissal"), each side bearing its own costs and attorneys' fees. Dkt. 89.

5         On January 7, 2019, Crystal filed a renewed Motion for Summary Judgement ("MSJ 2").

6    Dkt. 120-9. On July 12, 2019, the Court granted MSJ 2 for contributory copyright infringement,

7    but denied it as to vicarious copyright infringement. Dkt. 201. In its decision, the Court held that

8    "based on the current record, a reasonable jury could find that Crystal Dynamics used MOVA

9    output in the creation of *ROTTR* itself." Dkt. 201 at 12.

10        On February 25, 2019, the Court granted the parties' stipulated dismissal of Square Enix,

11   Inc. Dkt. 177.

12        On April 30, 2020, Crystal filed a third Motion to Dismiss ("MTD 3") for the E3 trailer.

13   Dkt.  265. On October 8, 2020, the Court granted MTD 3, holding that while the Second Amended

14   Complaint plausibly alleged vicarious infringement in connection with the E3 Trailer, Rearden's

15   claims related to the E3 Trailer did not relate back to the original complaint and so were time-

16   barred. Dkt. 271. After all of these motions to dismiss and for summary judgment were resolved,

17   Rearden's primary claim remained intact: vicarious copyright infringement through the use of

18   MOVA by DD3, at Crystal's direction, in the ROTTR game.

19        On May 12, 2022, Crystal sent a letter ("Admission Letter") to DD3 and Rearden counsel

20   regarding DisputeSoft's return to Rearden of MOVA Assets related to ROTTR. *See* Perlman

21   Decl., Ex. A.

22        On March 15, 2023 and July 26, 2023, the Court issued an order and amended order that

23   MOVA Assets files recovered by DisputeSoft with Crystal or Microsoft copyrighted material are

24   to be produced to Rearden as confidential discovery. Dkt. 305, 309.

25        On December 21, 2023, with similar facts as this case, a jury found "Disney vicariously

26   liable for infringing the copyright in the MOVA software program". Disney Case[5] Dkt. 691.

27

28   [5] *Rearden, et al. v. Disney, et al.*, 4:17-cv-04006-JST (N.D. Cal.) ("Disney Case")

C.      **Crystal-Rearden Settlement Efforts and Dismissal (2017-2024)**

On December 21, 2017, Crystal and Rearden held a brief mediation with Howard Herman (Dkt. 39).  No Crystal personnel other than inside counsel attended any subsequent mediation or settlement conference.

On November 28, 2018, Mr. Herman held another mediation that did not settle. Dkt. 118.

On March 29, 2022, the Court ordered the matter referred to Magistrate Judge Laurel Beeler for settlement. Dkt. 282. On April 27, 2022, a settlement conference was held. Dkt. 290.

In the summer of 2023, long after the end of the April 2022 settlement conference, the parties resumed settlement negotiations on their own. On August 31, 2023, the parties believed they had reached an agreement to settle the case.[6] Accordingly, on September 20, 2023, the Parties stipulated to the Court they were close to settlement. Dkt. 314. The Court order followed on September 21, 2023. Dkt. 315.

On November 3, 2023, the parties stated they "… have reached an impasse on one material term that is necessary in order to finalize a settlement agreement."[7] Dkt. 316. Crystal requested Judge Beeler's renewed assistance. Dkt. 316.

On January 16, 2024, Judge Beeler held a settlement conference in an attempt to resolve the impasse on the one material term, it was unsuccessful. Dkt. 322, Dkt. 329:25-27. The parties continued to negotiate to resolve the one remaining material term, but in the end, for reasons Rearden will disclose if permitted by the Court, *see supra*, n. 6, the impasse remained.

On March 5, 2024, Plaintiffs moved for voluntary dismissal with prejudice, Dkt. 329, and on March 7, 2024, the Court granted the motion, allowing Crystal 30 days to bring any motion for costs and fees. On April 3, 2024, Crystal filed the present motion.

---

[6] Rearden believes it is appropriate to disclose details regarding the material terms on which agreement and impasse had been reached, but in an abundance of caution, Rearden will provide that information to the Court only if the Court grants its administrative motion (Dkt. 347) or on the Court's request.

[7] *See supra*, n. 6.

III.   **LEGAL STANDARDS**

The Copyright Act provides that "Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

A.   **Prevailing Party**

Following the dismissal of a claim, a defendant is a prevailing party if the dismissal creates a "material alteration of the legal relationship of the parties." Material alteration exists, inter alia, where plaintiff's ability to "refil[e] the claim against the defendant in federal court" is impeded. Typically, a dismissal without prejudice—unlike dismissal with prejudice—does not materially alter the legal relationship of the parties.

*Good Job Games Bilism Yazilim Ve Pazarlama A. v. SayGames LLC*, No. 19-cv-7916-EMC, slip op. at 3-4 (N.D. Calif., May 4, 2023) (citations omitted).

B.   **Whether Fees Should Be Shifted**

Courts "may … award a reasonable attorney's fee to the prevailing party" on copyright claims. 17 U.S.C. § 505. This broad statutory language "clearly connotes discretion, and eschews any precise rule or formula for awarding fees." Courts have "wide latitude to award attorney's fees based on the totality of circumstances in a case," subject to two restrictions:

> First, a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment. Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

In determining whether to award fees, courts may consider several factors, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." Courts must place "substantial weight on objective reasonableness," but this "can be only an important factor in assessing fee applications – not the controlling one." "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." A court "retains discretion" to award fees "even when the losing party advanced a reasonable claim or defense."

*Atari Interactive, Inc. v. Redbubble, Inc.*, No. 18-cv-3451-JST, slip op. at 1-2 (N.D. Calif., Sept. 12, 2022) (citations and footnote omitted; quoting and citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 200, 202-03, 207-09 (2016);*Shame On You Prods., Inc. v. Banks*, 893

F.3d 661, 666 (9th Cir. 2018)).  "Courts may also consider … 'the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff.'" *Oracle Am., Inc. v. Hewlett Packard Enter. Co..*, No. 16-cv-1393-JST, slip op. at 2 (N.D. Calif., Nov. 12, 2019) (quoting *Ets-Hokin v. Skyy Spirits*, 323 F.3d 763, 766 (9th Cir. 2003)).

### C.        Whether Fees Sought Are Reasonable

In determining the amount of fees awardable under Section 505, the "'most useful starting point for determining the amount … is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  "Excluded from this fee calculation are hours that are not reasonably expended, i.e., hours that are 'excessive, redundant, or otherwise unnecessary.'" "Controlling precedent establishes 'that a party entitled to attorney's fees as a prevailing party on a particular [copyright] claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any related claims.'"

*Oracle Am., Inc. v. Hewlett Packard Enter. Co..*, No. 16-cv-1393-JST, slip op. at 2 (N.D. Calif., Nov. 12, 2019) (citations omitted; quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1027 (9th Cir. 1985); *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003)).

### IV.        <u>ARGUMENT</u>

Crystal "prevailed" on the copyright claims in this case in the technical sense that they were ultimately dismissed with prejudice. But the proceedings in this case, along with Crystal's willingness to settle, demonstrate that Rearden's positions were reasonable, not frivolous, and not motivated by any improper goal. Were the Court to award fees to Crystal, it would deter copyright owners from asserting their legitimate rights, even when a defendant's public statements admitted *prima facie* copyright infringement, and where actual evidence of infringement can be found only in a third-party's – here, DD3's – source code or other confidential technical files. Awarding fees would also deter plaintiffs from voluntarily dismissing litigation once it believes the further cost outweighs the risk-discounted potential reward.

### A.        The Court Should Not Shift Crystal's Attorneys' Fees to Rearden

Courts consider five factors in deciding whether to "award a reasonable attorney's fee to the prevailing party" under 17 U.S.C. § 505: "(1) the degree of success obtained, (2) frivolousness,

1   (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need

2   to advance considerations of compensation and deterrence." *Shame On You*, 893 F.3d at 666; *see*

3   *also* Dkt. 336 at 14:12-16 (quoting *Wall Data Inc. v. L.A. Cnty. Sheriff's Dept.*, 447 F.3d 769, 787

4   (9th Cir. 2006)). Because each of these five factors in this case weighs against fee-shifting, the

5   Court should not award fees to Crystal.

6                    *1.    Rearden's Voluntary Dismissal Provides a Low Degree of Success*

7          Section 505 requires, as a threshold matter, that only a "prevailing party" may even file a

8   motion for fees.  The "degree of success" factor, as interpreted by the Ninth Circuit and by this

9   Court, considers more than whether the party merely prevailed; among other restrictions, it

10  analyzes whether the party prevailed on the merits or merely on a technical defense. *DuckHole*

11  *Inc. v. NBCUniversal Media LLC*, No. 12-cv-10077, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25,

12  2013) ("This factor weighs more in favor of a party who prevailed on the merits, rather than on a

13  technical defense."); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 957 (9th Cir.

14  2012), *rev'd on other grounds* 572 U.S. 663 (2014) (denying attorney fees where defendant

15  obtained summary judgment based on laches rather than on a lack of evidence of infringement). In

16  particular, courts have held that only a small degree of success is obtained where a plaintiff

17  voluntarily dismisses a claim with prejudice without the court ever issuing a decision on the

18  merits. *See, e.g., Nutrivita Laboratories, Inc. v. VBS Distribution Inc.*, 160 F.Supp.3d 1184, 1190-

19  91 (C.D. Cal. 2016) ("The Court at no point ruled that VBS prevailed on the merits of the disputes

20  here, including the copyright dispute. Accordingly, VBS obtained a relatively small degree of

21  success for the purposes of determining a fee award."); *Bridgeport Music, Inc. v. London Music,*

22  *U.K.*, 345 F.Supp.3d 836, 843 (M.D. Tenn. 2004) ("[A] stipulation of dismissal with prejudice is

23  clearly a much lesser degree of success than a judicial vindication of the defendants' position.").

24         Here, Crystal has never obtained judgment disposing of Rearden's copyright claim on the

25  merits; in fact, the last order regarding Rearden's copyright claims held that Rearden had

26  presented sufficient evidence to overcome summary judgment and put vicarious copyright

27  infringement before a jury. Dkt. 201 at 11-12. The Court granted Crystal's motion to dismiss

28  Rearden's infringement allegations relating to the E3 trailer with prejudice based on the statute of

1   limitations,[8] not on the merits. Dkt. 271 at 10 ("the Court holds that E3 Trailer portion of its

2   vicarious infringement claim is barred by the statute of limitations."). Courts repeatedly find that

3   even a *complete* dismissal – much less a partial dismissal, as here – based on the statute of

4   limitations is not a sufficiently high degree of success to support an award of attorney's fees.

5   *Wolf v. Travolta*, No. 2:14-cv-938, 2016 WL 1676427, at *4 (C.D. Cal. Apr. 25, 2016) (holding

6   that grant of summary judgment based only on the statute of limitations does not support an award

7   of attorneys' fees); *cf. Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996) ("Fogerty was a

8   defendant author and prevailed on the merits rather than on a technical defense, such as the statute

9   of limitations, laches, or the copyright registration requirements.").  Notably (and as will be

10  addressed below regarding frivolousness and reasonableness), *the Court* permitted Rearden to add

11  its claims based on the E3 Trailer to the complaint in its order on the motion for summary

12  judgment, holding that the Court could not say at that time that amendment to add the E3 Trailer

13  would be futile. Dkt. 201 at 12:25-26. Although Rearden's voluntary dismissal with prejudice,

14  which terminated the remaining claims, left Crystal as the prevailing party, it is not a decision on

15  the merits and therefore demonstrates a small degree of success. Dkt. No. 332; *Nutrivita*, 160

16  F.Supp.3d at 1190-91; *Bridgeport*, 345 F.Supp.3d at 843.

17          Crystal's argument for its degree of success fails to address its own failure to secure

18  victory on the merits, and misstates the proceedings in this case as they relate to the patent claims.

19  The only case it cites in support of its degree of success, *Choyce v. SF Bay Area Independent*

20  *Media Center*, No. 13-cv-1842-JST, 2014 WL 5597274, at *2-*3 (N.D. Cal. Nov. 3, 2014), was

21  one in which the Court dismissed a complaint with prejudice for failure to plausibly allege

22  copyright ownership—a required *prima facie* showing that must be established on the merits,

23  rather than a technical defense. Moreover, unlike cases in which a party obtains dismissal of the

24  entire complaint based on the statute of limitations, here Crystal obtained dismissal of only *part* of

25

26

---

27  [8] Rearden filed suit in July 2017. Rearden was not initially aware the June 2014 E3 trailer used
    MOVA, because Crystal did not publicize any MOVA use until August 2014 (see note 4, above),
28  and even then, announced its use in the ROTTR game, not the E3 trailer.

1  Rearden's claim based on the statute of limitations; Rearden's eventual dismissal of its remaining

2  copyright claims was voluntary. Dkt. No. 332.

3        As to the patent claims, Crystal ignores that the parties stipulated under Fed. R. Civ. P.

4  41(a)(1)(A)(ii) to dismissal of Rearden's patent infringement claims without prejudice, and with

5  the express condition that *"[e]ach side will bear its own costs and attorney's fees."* Dkt. 89 at 1:2-

6  5. Crystal's stipulation waives any claim to any attorney's fees related to the patent claims. And

7  because a stipulation of dismissal lacks "judicial imprimatur," Crystal would not be a prevailing

8  party on the patent claims, even if those claims had been dismissed *with* prejudice, and even if

9  Crystal had *not* stipulated that the parties would bear their own fees and costs. *Keith Mfg., Co. v.*

10 *Butterfield*, 256 F.Supp.3d 1123, 1135 (D.Or. 2017), *rev'd on other grounds*, 955 F.3d 936 (Fed.

11 Cir. 2020) (citing *RFR Industries, Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir.

12 2007)); *see also Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 19-cv-6359, 2020 WL

13 7889048, at *5 (C.D. Cal. Nov. 23, 2020).

14       The Court never reached a decision on the merits on Rearden's copyright cause of action.

15 Rather it dismissed  assertions against one accused work based on the statute of limitations, and as

16 to the others, granted summary judgment on contributory infringement, but allowed Rearden to

17 proceed on a vicarious infringement theory. Rearden dismissed the remainder of its claims

18 voluntarily. Crystal's low degree of success weighs against fee-shifting.

19       **2.      Rearden's Copyright Claims Were Well Founded in Fact and Law, Not**

20       **"Frivolous"**

21       The evidence Rearden was able to obtain through public sources showed a strong

22 probability that Crystal used MOVA to make ROTTR. As the Complaint explains, Camilla

23 Luddington, the actress who performed the facial capture performance for ROTTR, told a reporter

24 in a video *entitled* "Camilla Luddington Talking about MOVA" described in great technical detail

25 the experience and advantages of using MOVA over the facial capture technology used in prior

26 Tomb Raider games, and makes it clear you'll be seeing "a lot" of MOVA in the ROTTR game:

27       In the previous [Tomb Raider] game we were using the dots on your face, which is about
         90 points of reference. With MOVA, it's a fluorescent paint that gets airbrushed onto your
28       face. It takes about 45 minutes. You can't see it in natural light, but if you go under a black

light you are able to see it. And it's around 7,000 points of reference so it's a much more realistic and the capture is just unbelievable, and you'll see a lot more of that in the [ROTTR] game.[9]

Ms. Luddington continued to laud MOVA's use in the ROTTR game well after ROTTR's 2015 release, *including pointing to MOVA's use within actual ROTTR gameplay* in June 2016:

[The facial capture] is obviously more advanced, which you can see between the two games [the prior Tomb Raider game and ROTTR] … something called MOVA. And just so you understand what that is, usually when you do motion capture you get more focal points on your face and there are about 90 points of reference. For this game [ROTTR], MOVA, I actually have a picture on my Instagram, they take a paint and they airbrush on little dots. So, in regular light you can't see it, but it's fluorescent, it shows up under a black light. And that is 7,000 points of reference. So, the difference between 90 to 7,000 is just shows how much more detailed it is.[10]

Video game industry publications such as Eurogamer reported that ROTTR used MOVA for cut-scenes within the ROTTR game, not merely for the trailer, to create "some of the most nuance[d] cinematic sequences we've seen to date." *Id.* at ¶ 2, n. 5 (quoting Linneman, John, "Tech Analysis: Rise of the Tomb Raider", Eurogamer.net, November 11, 2015. http://www.eurogamer.net/articles/digitalfoundry-2015-rise-of-the-tomb-raider-tech-analysis). Luddington posted high-resolution photographs of herself with MOVA Contour's phosphor-based makeup on Twitter and Instagram, confirming with photographic evidence that she participated in a MOVA capture session for ROTTR. *Id.* at ¶¶ 98-99. The public admissions of Crystal's agents and others that MOVA was used for ROTTR provided Rearden more than enough factual basis to bring its lawsuit. And notably, Crystal has never retracted or removed those Tweets, Instagram posts, linked YouTube videos, and other public statements, and Crystal has never produced any evidence suggesting that it directed or requested either USA Today or Eurogamer to retract these statements about the use of MOVA in ROTTR.

---

[9] Graham, Jefferson, USA Today Tech Celebrities Talking Tech, September 4, 2014. https://youtu.be/lwZOUzuv63k at 0:31.

[10] Resero, "Let's Play Rise of the Tomb Raider with Camilla Luddington," June 2, 2016, https://youtu.be/lPkU-kTIMnk?si=G7PtpfCEqi5rrtC- at 9:52.

1    The public statements above were, by themselves, sufficient to defeat summary judgment

2  notwithstanding Crystal's employees' "repeatedly reassur[ing] Rearden that MOVA was not used

3  to make ROTTR." Dkt. No. 336 at 5:2-3. The Court's July 2019 order denying Crystal's motion

4  for summary judgment listed evidence of use of MOVA in ROTTR, including (1) ROTTR Game

5  Director Brian Horton's public statements in interviews about the game using "1000 points of data

6  captured from Camilla Luddington's performance," which indicates use of MOVA rather than

7  motion capture dots (Dkt. 194 at 8); (2) Luddington's tweets describing performing MOVA

8  capture (Dkt. 194 at 9); and (3) DD3's Facebook post linking to Horton's interview stating "Mova

9  used to create the new great looking Tomb Raider!" (Dkt. 194 at 9-10). Because the Court

10  concluded that a jury could weigh Crystal's self-serving litigation-driven testimony from its own

11  employees that MOVA was not used and assess their credibility in light of the public admissions

12  made before litigation, it denied Crystal's motion for summary judgment. Dkt. 194 at 10-11.

13    In discovery here and in the related cases, Rearden subsequently obtained additional

14  evidence of use of MOVA in ROTTR. That evidence includes an email thread from late

15  September 2014, produced by DD3, in which ███████████████████████████████

16  ████████████████████████████. Perlman Decl., Ex. F. ███████████████

17  ████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████

19  ██████████████████████████████████████████ *Id.* A "FACS session" is a

20  capture of many facial expressions that encompass the variety of human facial expressions, so that

21  "you can create any sort of complex expression that a human face can make." Dkt. 128-6 at ¶¶ 4-8.

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████

25  ███████   Perlman Decl., Ex. F. This exchange evidences that MOVA Software was used ████████

26  █████████████████████████████████████████████████████████

27  █████████████████████████████████████████████████

28  █████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████████

2 ███████████████████████████████████ [11] Perlman Decl., Ex. F; Dkt. 1 at ¶ 40. These

3 emails from September 2014 were exchanged more than three months **after** the release of the E3

4 Trailer on June 9, 2014. *Compare* to Dkt. 271 at 7 (identifying the release date for the E3 Trailer).

5 This demonstrates a likelihood that the MOVA software was used not only during April 2014

6 Luddington FACS capture session, but also in September 2014, after the E3 Trailer, and expressly

7 on behalf of Crystal. Whether or not the April 2014 MOVA capture session was commissioned

8 entirely or in part for the E3 Trailer is irrelevant: There is no question that MOVA Software was

9 *also* used at least in September 2014, to process the MOVA facial capture output files that were

10 expressly sent to Crystal for use in the ROTTR game.

11          There is additional evidence that Crystal always intended the Luddington capture to be

12 used in ROTTR. An April 10, 2014 email ███████████, produced by DD3 at Bates Number WD-

13 DD3-KP0011052, states that █████████████████████████████████████████

14 ██████████████████████████████████████████████████████████████

15 ██████████████████████████████ Perlman Decl., Ex. E. During the April 2014

16 MOVA capture session, DD3 performed both continuous Contour captures, which were used for

17 the E3 trailer, and FACS captures, which were not needed or used for the E3 Trailer, and were

18 intended for animating the Lara Croft character's face in the ROTTR game. Dkt. 128-6 at ¶ 3.

19          Rearden's infringement theories have not shifted. For example, Crystal argues that

20 Rearden changed its theory from DD3's use of MOVA to make ROTTR to DD3's use of MOVA

21 software to make ROTTR through the use of head-mounted cameras. Dkt. No. 336 at 18:17-22.

22 But these are not two different theories, and they were explained in Rearden's opposition to the

23 second motion for summary judgment. Dkt. 128-6 at ¶ 7. In Perlman's declaration in opposition to

24 Crystal's motion for summary judgment, and again in his declaration here, he explained how the

25 FACS capture of Luddington would be used to map a high-resolution facial capture done with the

26

27 ────────────────────

28 [11] DD3 used the terminology of MOVA "scans" and "takes" in evidence in the *Beauty and the Beast* trial, in connection with DD3's admitted use of MOVA Software.

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

MOVA rig and software onto lower-resolution facial captures done with head-mounted cameras. Crystal senior technical staff publicly blogged it used FACS for the high-resolution capture of the Lara Croft character's face[12]:

> 7.      Exhibit 2 pages 1-4 show different FACS expressions, and how they can be combined to produce a realistic animated face, such as that shown on the right on page 5. On page 6, DD3 shows a typical FACS-based facial capture session where Mr. LaSalle's face is captured at the low-resolution of the dots while he performs on a stage using a head-mounted rig. This appears to be the same head-mounted rig used by Ms. Luddington during her gameplay and cinematic motion capture sessions for ROTTR. Then, these low resolution expressions are matched by DD3 to the high-resolution FACS expressions, previously captured with Contour, resulting in a high resolution facial animation, such as that shown on page 5.

Dkt. 128-6 at ¶ 7; *see also* Perlman Decl. at ¶ 24.

The facts set forth above, including the subset that the Court already found sufficient to survive summary judgment, demonstrate that Rearden's claims are not frivolous, weighing strongly against fee-shifting. "A claim is frivolous when it is 'clearly baseless' and involves 'fantastic or delusional scenarios.'" *Epikhin v. Game Insight North America*, No. 14-cv-4383-LHK, 2016 WL 1258690, at *6 (N.D. Cal. Mar. 31, 2016) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *4 (N.D. Cal. Aug. 12, 2005)). Not only does the evidence above demonstrate that Rearden's claims have a solid basis in fact, the Court confirmed that Rearden's evidence supported its claims by denying summary judgment. Dkt. 201 at 12. "If a plaintiff has a claim that hinges on disputed facts sufficient to reach a jury, that claim necessarily is reasonable because a jury might decide the case in the plaintiff's favor." *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 18-cv-3451-JST, 2022 WL 7467297, at *2 (N.D. Cal. Sept. 12, 2022) (Tigar, J.) (quoting *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016)).

---

[12] "…Lara models used in *Rise of the Tomb Raider*… showing a range of facial expressions in order to capture the surface detail and overall morphology… Many of the poses were based on FACS (Facial Action Coding System)" Kam Yu, Lead Character Artist, *Rise of the Tomb* Raider. Official Tomb Raider Blog—Dev Blog: Building from Life, October 12, 2015. https://kamyuart.blogspot.com/2015/12/heres-link-to-short-blog-i-wrote-about.html and https://tombraider.tumblr.com/post/131036893850/dev-blog-building-from-life-kam-yu-lead

1    The Court may also consider the parties' settlement negotiations in assessing a fee award,

2  and the parties' multiple settlement discussions indicate that Rearden's claims were reasonable

3  and non-frivolous. The Ninth Circuit has explained that in assessing a fee award, "the district court

4  has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2)

5  to give those amounts as much or as little weight as it sees fit." *A.D. v. California Highway Patrol*,

6  712 F.3d 446, 461 (9th Cir. 2013). In its motion, Crystal argues that the parties attended "multiple

7  formal mediation sessions and settlement conferences," and represents that at these conferences,

8  Crystal employees spoke directly to Rearden's founder Perlman. Dkt. 336 at 5:13-20. These

9  multiple conferences did not result in a settlement.[13] Dkt. 336 at 5:25-27. That Crystal was willing

10  to settle this case undermines Crystal's repeated assertions that Rearden's claims were "knowingly

11  meritless." *Compare* to Dkt. 336 at 20:3.

12                          **3.      *Rearden's Litigation Conduct Was Reasonable***

13    The same facts discussed above as to frivolousness show that Rearden's conduct was

14  reasonable. "A claim is objectively unreasonable where the party advancing it should have known

15  from the outset that its chances of success in th[e] case were slim to none." *Epikhin*, 2016 WL

16  1258690, at *5. In *Oracle Am., Inc. v. Hewlett Packard Enterprise Co.*, No. 16-cv-1393-JST, 2019

17  WL 10303651, at *2 (N.D. Cal. Nov. 12, 2019) (Tigar, J.), this Court explained that a copyright

18  owner "faced with evidence of widespread, unauthorized copying of its copyright-protected

19  software, including some degree of participation by [the defendant]," had acted reasonably. There,

20  the plaintiff's evidence of infringement prior to filing suit was largely circumstantial: the

21  installation of many patches containing copyrighted software code for the defendant's customers.

22  *Id.* The Court explained that "Faced with these facts, any company in [the plaintiff's] position

23  would have vigorously litigated a copyright infringement case against [the defendant]. That [the

24  plaintiff] was ultimately unable to show a specific instance of copyright infringement does not

25  make its litigation conduct unreasonable." *Id.* The Court in *Oracle* accordingly denied the

26  defendant's motion for fees. *Id.* at *4. The present case similarly involves a plaintiff faced with

27

28
―――――――――――――――――――
[13] *See supra*, n. 6.

1   evidence of widespread, unauthorized copying of its copyright-protected software (MOVA),

2   including some degree of participation by Crystal through the public statements of Luddington,

3   Horton, and other Crystal representatives. But unlike in *Oracle*, Rearden survived three motions to

4   dismiss and two summary judgment motions, and still maintains that it has evidence of

5   infringement—Rearden simply made a business decision that after the close of fact discovery,

6   continued litigation was not worth the cost.

7       Crystal's fee motion recites a litany of contradictory complaints, including that Rearden

8   both unreasonably failed to expend resources on discovery (Dkt. 336 at 18:1-11) and also

9   unreasonably sought third-party discovery that it expected to support its claim (Dkt. 336 at 19:21-

10  20:2). Crystal also mischaracterizes Rearden's position throughout its motion, falsely suggesting

11  that Rearden attempted "to expand the scope of this Action" by conflating Crystal with the Studios

12  Defendants and that Rearden changed its assertion to suggest "that MOVA could be captured

13  using HMC's rather than a semicircular rig with dozens of cameras." Dkt. 336 at 18-19. These

14  complaints are largely addressed in Section IV.A.2, *supra*: Rearden presented a consistent

15  litigation theory throughout the case concerning how the MOVA software could be used in

16  conjunction with head-mounted cameras (*see* Dkt. 128-6 at ¶ 7); did not "concoct facts that were

17  directly contradictory to its previous allegations" concerning head-mounted cameras, and did

18  nothing wrong in pursuing claims that ultimately defeated summary judgment. Notably, in

19  Crystal's argument that Rearden acted unreasonably in refusing to dismiss "knowingly meritless

20  claims," Crystal refers only to evidence produced in 2018 and earlier, **before** the Court's denial of

21  Crystal's second motion for summary judgment. *Compare* Dkt. 336 at 20:10-18 (discussing

22  evidence produced in 2017-18) to Dkt. 201 (order denying summary judgment entered on July 12,

23  2019). As noted above, it cannot be objectively unreasonable for a plaintiff to continue pursuing a

24  case that has survived summary judgment. *Atari*, 2022 WL 7467297, at *2.

25      Crystal alleges that Rearden would face "a Hobson's choice" in serving damages expert

26  disclosures: "either entering into the record a baselessly high damages number or an accurate but

27  absurdly low damages number." Dkt. 336 at 21:1-3. Even crediting this assertion, Crystal

28  effectively concedes that Rearden would have been able to pursue at least a small claim for

1    damages. This Court has held that even a small potential recovery is sufficient for a plaintiff to

2    take the case to trial. In *Atari*, the Court denied summary judgment for lack of damages, but

3    limited the plaintiff to pursuing either minimal statutory damages or damages based on evidence

4    of the defendant's profits. 2022 WL 7467297, at *2. The Court accordingly held that because its

5    rulings "may have given Atari comfort that it could pursue a case worth some amount," it was not

6    objectively unreasonable for Atari to have pursued its copyright claims to trial. *Id.*

7        If it was reasonable for the *Atari* plaintiff to try a copyright claim on which – even if it had

8    prevailed – it would have been unable to obtain significant damages, then *a fortiori* it would have

9    been reasonable for Rearden  to do so as well. If anything, Rearden was more reasonable than the

10   plaintiff in *Atari*, pursuing its copyright infringement claim through the close of discovery,

11   including through the denial of multiple defense summary judgment motions , but then voluntarily

12   dismissing its claim at the outset of expert discovery, after a low damages verdict in a related case

13   suggested that the juice was not worth the squeeze. If, as in *Atari*, Rearden could reasonably have

14   taken this case to trial, Rearden's decision to voluntarily dismiss was not unreasonable.

15       Crystal's complaints regarding discovery—that Rearden simultaneously failed to take

16   necessary third-party discovery while driving up Crystal's costs with unnecessary third-party

17   discovery—lack merit. Crystal raised the issue of a lack of deposition of Camilla Luddington in its

18   summary judgment motion, and the Court held that Rearden did not need to take her deposition to

19   survive summary judgment: "to the extent Crystal Dynamics suggests that the Court should draw

20   an adverse inference from this failure, ECF No. 141-4 at 8 n. 5, it provides no authority for the

21   request, and the Court declines it." Dkt. 201 at 9 n. 6. Crystal submitted declarations from

22   Luddington, Horton, and Yu in opposition to Rearden's motion for summary judgment, and they

23   were insufficient to overcome Rearden's evidence of infringement. Dkt. 56, 58, 60. If Rearden did

24   not need to take the depositions of Luddington, Horton, and Yu to reach a jury, then it cannot have

25   been objectively unreasonable for Rearden to save litigation costs (for both sides) by forgoing

26   their depositions. *See Atari*, 2022 WL 7467297, at *2. Similarly, as to Rearden's pursuit of

27   discovery from DD3, the order to which Crystal refers explains that DD3 identified files in its

28   possession subject to the Special Master's return orders "that may contain the intellectual property

PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES

1    of Crystal Dynamics or Microsoft that may be relevant to the *Crystal Dynamics* litigation

2    ("CRYSTAL Files")." Dkt. 309 at ¶ 1. It cannot possibly have been unreasonable for Rearden to

3    seek discovery from DD3 of material that **DD3** identified as potentially relevant to this litigation.

4          And that additional discovery from DD3 has provided additional evidence that MOVA was

5    used in ROTTR. Crystal, not Rearden, sent a letter to the Special Master in the SHST Litigation

6    seeking protection for MOVA Assets that included copyrighted material from ROTTR. Perlman

7    Decl., Ex. A. After the parties reached agreement on the stipulation at Dkt. 309, DisputeSoft

8    produced 4.48 Gigabytes of MOVA Assets that it classified as containing Crystal-copyrighted

9    materials. Perlman Decl. at ¶ 7. DisputeSoft's production is still incomplete, because Crystal has

10   produced files showing use of MOVA in ROTTR that have not yet been produced by DisputeSoft.

11   Perlman Decl. at ¶¶ 9, 27-28; Exs. C-D. For example, Crystal produced ████████████████

12   ████████████████████████████████████████████, that was never produced by

13   DisputeSoft. *Id.* And notably, this FACS pose would not have been used in the E3 Trailer, but

14   would only have been used to animate the Lara Croft character in the ROTTR game. *Id.* at ¶¶ 29-

15   30.

16         In sum, the "totality of Rearden's Litigation Conduct" is that after Rearden brought a

17   lawsuit to enforce its copyright when Crystal publicly advertised that ROTTR used MOVA to sell

18   ROTTR based on its "more realistic" and "just unbelievable" facial graphics (Dkt. 1 at ¶ 2), it

19   obtained evidence that contradicted Crystal's assertions that it only used MOVA in the E3 Trailer

20   and not in the ROTTR game itself; defeated two summary judgment motions brought by Crystal

21   on the basis of evidence that was sufficient to raise a triable dispute; nearly reached a settlement

22   agreement but for an impasse on "one material term"; and ultimately, dismissed the lawsuit for

23   economic reasons before serving its expert reports. Rearden's litigation conduct was objectively

24   reasonable, and weighs against fee-shifting.

25         ### 4.    *Rearden Brought This Lawsuit in Good Faith with Proper Motivation*

26         As discussed above, Rearden brought this lawsuit because Crystal's representatives,

27   including the actress who played Lara Croft, told the world that ROTTR used MOVA to persuade

28   customers to buy the game for its realistic graphics. That is the very essence of a good-faith

1  copyright infringement lawsuit: a copyright owner seeking to enforce its copyright where a

2  defendant has publicly admitted its unauthorized use of copyrighted material. This Court has

3  repeatedly held that where a copyright owner honestly believes that the defendant is infringing its

4  copyright, the lawsuit is brought in good faith. *See, e.g., Goldberg v. Cameron*, No. 05-cv-3534-

5  RMW, 2011 WL 3515899, at *5 (N.D. Cal. Aug. 11, 2011) ("His 'motivation in bringing the

6  claims was to protect an interest that [he] believed was [his],' despite the lack of merit in his

7  claims and no matter how misguided his belief."); *Oracle*, 2019 WL 10303651 at *3 (no bad faith

8  where the plaintiff owned valid copyrights and brought the action to protect those copyrights).

9      Crystal argues in its motion that Rearden brought this lawsuit in bad faith because it

10  stemmed from the original SHST litigation in which Rearden learned that Greg LaSalle "stole

11  hardware and software related to the MOVA Contour technology from Rearden and sold it to a

12  Chinese company without Rearden's authorization or knowledge."[14] Dkt. 336 at 21. Crystal

13  argues that "Rearden seemingly wanted companies to know that, if they worked with DD3, they

14  would be guilty by association and be targeted for litigation." Dkt. 336 at 22:5-7. But that simply

15  is not true; Rearden has only brought lawsuits against defendants – the studios and Crystal – who

16  publicly represented that they or DD3 used MOVA. DD3 has provided special effects for

17  hundreds of films,[15] but Rearden has only brought lawsuits against studios that hired DD3 to use

18  the stolen MOVA technology. In this particular case, Rearden attempted to settle matters relating

19  to customers directly with DD3, but those settlement negotiations were unsuccessful, forcing

20  Rearden to file this lawsuit before the statute of limitations with respect to ROTTR ran out.

21  Perlman Decl. at ¶ 12. Rearden has every right to bring lawsuits to enforce its copyright, including

22  this lawsuit, and so the motivation factor weighs against fee-shifting.

23

24

25  _____

26  [14] Rearden omits the word "allegedly" from Crystal's description because a verdict was entered in
     Rearden's favor confirming that Greg LaSalle did in fact steal the MOVA Contour technology and

27  sold it to SHST. *See* SHST Litigation, Dkt. 427 at 14-15. This verdict was affirmed by the Ninth
     Circuit and confirmed by the *Beauty and the Beast* jury.

28  [15] https://en.wikipedia.org/wiki/Digital_Domain.

### 5.    *Deterrence Factors Weigh Against Fee-shifting*

This Court has held that "it is not the purpose of the Copyright Act 'to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.'" *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. 12-cv-4601-EMC, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014) (quoting *Thompkins v. Lil' Joe Records, Inc.*, No. 02-61161-CIV, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008)). Accordingly, where a plaintiff's claims are not frivolous or unreasonable, this Court has repeatedly held that the need for deterrence and compensation weighs against fee-shifting because plaintiffs asserting reasonable claims in good faith should not be deterred "based on the fear of a large attorney's fees award." *Epikhin*, 2016 WL 1258690, at *8; *see also Oracle*, 2019 WL 10303651, at *3 (same).

Crystal argues that a fee award will deter plaintiffs "who press on with litigation of meritless copyright claims even after it becomes evident that their claims are baseless." Dkt. 336 at 22:15-16. But a fee award here would in fact do the precise opposite—it would *force* plaintiffs to press on with litigation of copyright claims through trial, even where economically impractical, because a voluntary dismissal will invite a fee award. If Rearden pursued this litigation all the way through trial and lost, it would be in the same position as the plaintiff in *Atari*, who was not required to pay the fees of a defendant that prevailed on the merits. 2022 WL 7467297, at *2. It would be absurd to force copyright plaintiffs with meritorious liability claims but uncertain damages arguments to proceed through trial in order to avoid paying the defendant's fees. Considerations of deterrence and public policy accordingly weigh against fee-shifting, to avoid forcing copyright plaintiffs – not to mention, defendants and courts – to expend resources necessary to proceed to trial, simply to prove that they had a reasonable case.

Because all five factors weigh against fee-shifting, the Court should deny Crystal's motion for attorney's fees in its entirety.

### B.    **Even If Fee Shifting Were Appropriate, Crystal's Request Should Be Denied**

Even if the Court finds that at some point during the case, Rearden's claims became objectively unreasonable and some fees should be awarded, the award should be far less than the amount Crystal seeks. By both Crystal's admission and the Court's orders, Rearden's claims were

1    objectively reasonable until at least some point after the Court's partial dismissal of the Second

2    Amended Complaint on October 8, 2020, and whatever date that is (Crystal cannot pinpoint a date

3    or piece of evidence that it alleges rendered Rearden's claims untenable), the Court should not

4    award any fees incurred before that date. Further, because Crystal did not submit itemized invoices

5    supporting its fee motion, the Court cannot adequately assess the reasonableness of any of

6    Crystal's hours, and should deny the motion on that basis. Finally, the Court may not award

7    Crystal any fees spent on the patent claims, because Crystal stipulated that the parties would bear

8    their own fees and costs on the patent claims and was not a prevailing party on those claims.

9        1.    ***Even If Fee-shifting Were Appropriate, It Should Be Limited to the***

10             ***Period After the Court Determined that the Claims Became "Objectively***

11             ***Unreasonable"***

12    As discussed in detail above, Rearden contends that its claims were objectively reasonable

13    throughout the entire litigation, and no fee-shifting should occur at all. However, if the Court were

14    to determine that at some point, Rearden's litigation position became objectively unreasonable,

15    that must have occurred sometime after the partial dismissal of the E3 Trailer portions of the

16    Second Amended Complaint on October 8, 2020.

17    First, Rearden's position was necessarily objectively reasonable at least until the denial of

18    Crystal's motion for summary judgment on July 12, 2019. Again, "[i]f a plaintiff has a claim that

19    hinges on disputed facts sufficient to reach a jury, that claim necessarily is reasonable because a

20    jury might decide the case in the plaintiff's favor." *Atari*, 2022 WL 7467297, at *2. By denying

21    summary judgment on July 12, 2019, the Court explicitly found that "based on the current record,

22    a reasonable jury could find that Crystal Dynamics used MOVA output in the creation of *ROTTR*

23    itself. Dkt. 201 at 12. Under the clear precedent of *Atari* and the Ninth Circuit case it was

24    quoting, *VMG*, 824 F.3d at 887, Rearden's litigation was objectively reasonable on the record that

25    existed on July 12, 2019. No fee-shifting would be appropriate for any prior conduct, as the five

26    factors all weighed against fee-shifting up to that date.

27    Fee-shifting would also be inappropriate for the period between July 12, 2019, and the

28    dismissal of claims related to the E3 Trailer based on the statute of limitations on October 8, 2020.

1   In its summary judgment order, the Court granted Rearden leave to amend its complaint to add

2   claims related to the E3 Trailer, holding that the Court could not "say at this point that amendment

3   would be futile as to vicarious infringement." Dkt. 201 at 12. In its subsequent order dismissing

4   the portions of the amended complaint relating to the E3 Trailer, the Court found that Rearden

5   plausibly alleged the necessary elements of vicarious infringement—that DD3 committed an act of

6   direct infringement pursuant to a contract with Crystal (Dkt. 271 at 5), and that Crystal had the

7   right and ability to control DD3 (Dkt. 271 at 6). The Court concluded, however, that based on a

8   representation in summary judgment briefing that there were separate captures and separate acts of

9   infringement for the E3 Trailer and the ROTTR game, Rearden was estopped from arguing that

10  the E3 Trailer allegations related back to the original filing date of the complaint, and so the E3

11  Trailer claims were time-barred. Dkt. 271 at 8-10. The Court did not find Rearden's arguments to

12  be frivolous or implausible, and Rearden should not be sanctioned with a fee award for reasonably

13  litigating the E3 Trailer claims at the Court's suggestion.

14        Rearden's claims remained objectively reasonable throughout. Crystal does not identify

15  any point after the dismissal of the Second Amended Complaint at which Rearden's remaining

16  claims purportedly became unreasonable, and Rearden is unaware of any plausible candidate. But

17  if the Court were to award any fees, they should be limited to a period of time – if any –after

18  which the Court determines that Rearden's claims had become objectively unreasonable.

19              ***2.       Crystal's Failure to Submit Detailed Invoices Is Fatal to Its Fee Request***

20        Crystal's fee motion includes no invoices detailing exactly what work it performed for

21  which it billed approximately $1.3 million. Instead, it submitted summary tables listing the

22  number of hours spent for each of six phases of the litigation, without any breakdown of what

23  exactly those hours were spent doing. Dkt. 336-1 at ¶¶ 3-11; Dkt. 336-2; Dkt. 336-3. While a party

24  is not required to submit contemporaneous billing records, "broad summary entries" cannot be "so

25  general and/or repetitive…that the Court cannot properly discern the nature of the work

26  performed, *e.g.*, drafting, research, revising, editing, cite-checking etc., or the reasonableness of

27  the time expended on those tasks." *Lexington Luminance LLC v. Feit Electric Co., Inc.*, No. 18-

28  cv-10513, 2020 WL 7425320, at *7 (C.D. Cal. Oct. 20, 2020). This Court's Local Rule 54-5(b)(2)

1   setting forth certain requirements for a fee motion does not supplant the requirement that a party

2   seeking fees must submit sufficiently detailed records to allow the court to "determine if the time

3   spent was 'excessive, redundant, or otherwise unnecessary.'" *Pop Top Corp. v. Rakuten Kobo*

4   *Inc.*, No. 20-cv-4482-DMR, 2022 WL 901547, at *2 (N.D. Cal. Mar. 28, 2022).

5        Even during the last phase of the case—a period of about three and a half years, for which

6   Crystal seeks $658,012.10 in fees (Dkt. 336-2)—it is impossible to ascertain what work Crystal

7   performed was both reasonable and should be shifted. Crystal identifies the work that was done in

8   this phase as answering Rearden's Third Amended Complaint, offensive and defensive discovery,

9   work related to third party discovery in connection with the SHST Litigation, briefing for a

10  summary judgment motion that was never filed, preparation for a trial that never occurred and was

11  far in the distance, observing the Disney trial, expert testimony, and attending two settlement

12  conferences. Dkt. 336-1 at ¶ 11. It is impossible to know how much of the $658,012.10 Crystal

13  billed was for which of these general categories, much less how that time broke down within each

14  category. Certainly, it is hard to see how time spent observing the Disney Action, and briefing yet

15  another summary judgment motion and preparing for trial before the start of expert discovery, was

16  reasonable. It is also difficult to understand how Crystal spent so much time on fact discovery in

17  the last phase of the case, while it complains simultaneously that Rearden's discovery efforts were

18  minimal.[16]

19              *3.      Crystal Expressly Stipulated that It Cannot Recover on the Patent Claims*

20        As discussed previously, even if the Court awards Crystal fees related to defense of the

21  copyright claim, Crystal cannot obtain any award of the fees it spent defending Rearden's patent

22  claims because Crystal is not the prevailing party. Rearden's voluntary dismissal of its patent

23  infringement claims was "without prejudice," under a stipulation under Fed. R. Civ. P.

24  41(a)(1)(A)(ii)  under which "[e]ach side will bear its own costs and attorney's fees." Dkt. 89 at

25  1:2-5. That stipulation alone expresses a waiver of Crystal's right to seek attorney's fees for the

26  _____

27  [16] If the Court is at all inclined to award any fees to Crystal, it should require Crystal to produce
    detailed time records and permit additional briefing for Rearden to properly address the
28  reasonableness of Crystal's attorneys' purported billing.

1  patent claims. And even if it did not waive Crystal's claim, a stipulation of dismissal under Fed.

2  R. Civ. P. 41(a)(1)(A)(ii) does not make the defendant a prevailing party, and so cannot support a

3  fee award. *Keith*, 256 F.Supp.3d at 1135; *RFR*, 477 F.3d at 1353; *Realtime*, 2020 WL 7889048, at

4  \*5. If the Court grants any fee award to Crystal on the copyright claims, it must exclude any fees

5  for work done on the patent claims that were dismissed without prejudice, under a stipulation

6  under which the parties would bear their own fees and costs.

7  **V.      CONCLUSION**

8          Based on the extensive and repeated public statements of Camilla Luddington and Crystal

9  employees who worked on ROTTR that MOVA was used to create the ROTTR game, Rearden

10  brought this lawsuit to enforce its copyright in the MOVA software. To this day, none of these

11  public statements have been retracted or amended. The evidence Rearden obtained and presented

12  was sufficient to survive summary judgment, and to reach trial. Rearden ultimately voluntarily

13  dismissed its claims not because they lacked merit, but because the potential damages were

14  insufficient to justify the continued cost of litigation. Crystal never obtained a judgment on the

15  merits that it did not infringe Rearden's copyright. Rearden's claims and litigation conduct were

16  objectively reasonable throughout, and accordingly, Rearden respectfully requests that the Court

17  deny Crystal's motion for attorney's fees in its entirety.

18

19  Dated:  May 3, 2024                                Respectfully submitted,

20                                                      **ZUBER LAWLER LLP**
                                                        Joshua M. Masur
21

22                                      By:      /s/ Joshua M. Masur
                                                _____
23                                              Attorneys for Plaintiffs
                                                Rearden LLC and Rearden Mova LLC
24

25

26

27

28

                                                25                        Case No. 4:17-cv-4187-JST
                        PLAINTIFFS' OPPOSITION TO CRYSTAL DYNAMICS' MOTION FOR ATTORNEYS' FEES